**Jake PINO, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff). (Two Cases)**

**Nos. 92–82, 92–83.**

Supreme Court of Wyoming.

March 24, 1993.

Bert T. Ahlstrom and Daniel G. Blythe, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Richard A. Erb, Jr., Student Intern, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, and GOLDEN, JJ., and URBIGKIT, J. Ret.

CARDINE, Justice.

Appellant challenges his conviction for delivery of marijuana. He contends that the jury should not have been allowed to play an audio recording during deliberations and that because of alleged perjured testimony, he should have been granted a new trial.

We affirm.

Appellant raises these issues:

I.  Did the trial court err in allowing an audio tape and tape player into the jury room during deliberation?

II.  Did the trial court err in allowing the prosecutor to present evidence of uncharged misconduct and did the court err in failing to grant a mistrial?

III.  Did the court err in allowing the police officer to discuss the defendant's failure to cooperate and plead guilty like most criminal defendants do?

IV.  Did the court err in failing to give defendant proffered instructions?

V.  Did the court err in revoking appellant's probation?

VI.  Did the district court err in failing to grant a new trial in this case?

In order to work off criminal charges of her own, Dara Kenney became an informant for the Laramie County Sheriff's Department. She agreed to make several undercover drug buys under police surveillance. On the morning of June 27, 1989, Dara Kenney met with officers. They placed a wireless transmitter on her person so that they could monitor the "buy" and supplied her with $40.00 in recorded "buy" money.

Dara Kenney had arranged to make the "buy" by purchasing marijuana from Jake Pino. Dara Kenney had dated Jake Pino for nine years. She lived with Pino on and off during that time, and he is the father of her child.

The officers took Ms. Kenney to a Cheyenne convenience store where the drug transaction was to take place. Officers then secured surveillance positions that would allow them to observe the buy while remaining out of sight. Jake Pino, appellant, arrived at about one o'clock in the afternoon. Appellant told Ms. Kenney to drive his car for him because he was hearing "something funny" from the car. Appellant instructed Ms. Kenney to drive to her mother's house. While they were stopped at Ms. Kenney's mother's house, appellant stated that something was wrong with his tire, and he needed Ms. Kenney to get a tire iron. Appellant asked whether her father or sister had a tire iron. When Ms. Kenney indicated reluctance about finding a tire iron, appellant indicated that he would look for it himself. Ms. Kenney

said she would get her sister's keys, but told appellant to wait by the car because her sister was sunbathing and was not wearing much clothing.

Ms. Kenney proceeded inside the back fence, out of sight of the officers, and asked her sister for her car keys. While inside the fence, Ms. Kenney's sister asked whether Ms. Kenney had completed the buy yet. Ms. Kenney said she had not and was with Pino and needed the tire iron. Ms. Kenney leaned into the back door of the house and asked her niece to bring her the car keys. During the time that Ms. Kenney was inside the back fence, she was out of view of the officers but she could still be heard through the body mike.

After she obtained the keys, appellant and Ms. Kenney opened her sister's trunk and found a tire iron. Appellant tightened the lug nuts on the wheel of his car. Next, Ms. Kenney asked appellant if "he had brought the 'weed.'" Ms. Kenney then gave appellant the buy money. Appellant pulled a quarter ounce of marijuana from his pants and gave it to Ms. Kenney and asked her who it was for. Ms. Kenney replied that it was for a friend of hers. Ms. Kenney asked appellant if the marijuana "was any good," to which appellant replied "Oh, yeah, it's 'skunk.'" After appellant left, Ms. Kenney ran to the alley and met the officers where she turned the marijuana over to them. The officers conducted a field test on the substance Ms. Kenney gave them, and it tested positive for marijuana.

Appellant was arrested and charged with delivery of a controlled substance, marijuana, in violation of W.S. 35–7–1031(a)(ii) and W.S. 35–7–1014(d)(xiii). After hearing the evidence, the jury found appellant guilty of delivery of marijuana. The district court sentenced appellant to a term of not less than twenty-four months nor more than forty months in the Wyoming State Penitentiary.

At the time this transaction took place, appellant was serving probation for a previous controlled substance offense. Since appellant was convicted of an additional drug offense while on probation, the district court revoked his probation. The district judge imposed a sentence of not less than eighteen, nor more than thirty months for the probation revocation. The district judge ordered that the sentence for this offense and the prior offense be served consecutively.

### TAPE AND TAPE PLAYER DURING DELIBERATIONS

During trial, the State played the audiotape of the drug transaction that was recorded from Dara Kenney's body mike for the jury. While the jury was deliberating, it sent this note to the district judge:

> Please provide us with a tape player to review Exhibit 2.
>
> You and the attorneys had transcripts. Is it possible for us to have a transcript of Exhibit 2.
>
> /s/ Foreman

In response to the jury's note, the district court had the bailiff provide the jury with a tape player. The district judge also informed the jury that the transcripts were not available for their consideration since they were never introduced into evidence. Appellant contends that it was error to allow an audiotape and tape player into the jury room during deliberations.

In general, the trial court has discretion over whether to permit nontestimonial exhibits into the jury room during deliberations. *Stephens v. State*, 774 P.2d 60, 70 (Wyo.1989). *See also Stone v. State*, 745 P.2d 1344, 1349 (Wyo.1987). Appellant urges, however, that allowing the jury to review testimonial materials in deliberations violates the common law rule against allowing testimonial evidence into the jury room.

■ Appellant correctly asserts that testimonial evidence is not allowed into deliberations in order to prevent the jury from emphasizing some testimony over all the other testimony. Appellant cites *Schmunk v. State*, 714 P.2d 724 (Wyo. 1986) and *Chambers v. State*, 726 P.2d 1269 (Wyo.1986). However, the *Schmunk* and *Chambers* rules concerning testimonial evidence do not apply to this situation.

The tape in question here is not testimonial, rather it is the recording of a drug transaction. It is the actual recording of a criminal transaction, not testimony about an act. Therefore *Schmunk* and *Chambers* are both distinguishable.

In *Schmunk* the tape was a videotape and contained a pre-arrest interview that was secretly recorded without the defendant's knowledge. *Schmunk*, 714 P.2d at 728. Thus, *Schmunk* involved a testimonial statement, not the actual recording of a criminal transaction. *Chambers* can be distinguished in a similar fashion since the tape involved was a videotape of the victim's out-of-court testimony. *Chambers*, 726 P.2d at 1272–75. The other cases appellant cites, *Taylor* and *Stone*, also involve testimonial exhibits and are not applicable here. *Taylor v. State*, 727 P.2d 274, 276 (Wyo.1986) (videotape of an interview with a victim of a sexual assault); *Stone v. State*, 745 P.2d 1344, 1348 (Wyo.1987) (allowing taped confession to be reviewed in deliberations).

In discussing how an audiotape should be handled upon retrial, this court set out the general rule with regard to nontestimonial exhibits in *Stephens:*

> If the court concludes that the audiotape is not testimonial, then it may permit the jury to have the tape in the course of its deliberations just as any other exhibit may be furnished to the jury. If, however, it is perceived as testimonial, then the approach described in *Chambers* must be pursued.

*Stephens*, 774 P.2d at 70.

In discussing exhibits in the jury room, Louisell and Mueller note:

> Quite sensibly, courts have had some reluctance to permit the jury to take with it documents of a testimonial character, lest they "act as a speaking, continuous witness * * * to the exclusion of the totality of the evidence taken at the trial which must be viewed in its entirety."
> * * *
> But there is no rule of exclusion for tangible exhibits with verbal content. Nontestimonial exhibits with such content, such as contract documents or *recordings of criminal acts* which are verbal in nature, are generally allowed to go into the deliberations. Indeed, it would be highly peculiar to withhold such things from the jury's scrutiny, and somewhat inconsistent with the whole philosophy underlying the Best Evidence Rule[.]

(emphasis added) 3 David W. Louisell and Christopher B. Mueller, *Federal Evidence* § 390, pp. 683–84 (1979) & (Supp.1992). *See also Stone*, 745 P.2d at 1349 (*also quoting Louisell and Mueller*).

The audiotape here was not a testimonial exhibit, rather it was a recording of a criminal act. The district court did not err when it allowed an audiotape player into the jury room. Since the law favors allowing a nontestimonial exhibit into the jury room, we find no error.

### *UNCHARGED MISCONDUCT*

Appellant argues that the prosecutor was improperly allowed to present evidence of prior bad acts. Wyoming Rule of Evidence 404(b) provides:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ We afford deference to district court determinations on the admissibility of evidence of other crimes under W.R.E. 404(b). *Rivera v. State*, 840 P.2d 933, 940 (Wyo.1992) (*citing Pena v. State*, 780 P.2d 316 (Wyo.1989); *Noetzelmann v. State*, 721 P.2d 579 (Wyo.1986); and *Bishop v. State*, 687 P.2d 242 (Wyo.1984), *cert. denied* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985)). As long as there is a legitimate basis for the court's decision, there is no abuse of discretion. *Rivera,* at 940 (*citing Pena; Trujillo v. State*, 750 P.2d 1334 (Wyo.1988)). *See also Britton v. State*, 845 P.2d 1374, 1376 (Wyo.1992).

■ Appellant contends that the prosecutor introduced evidence that appellant had used marijuana while living with Dara Kenney. The prosecutor was asking direct examination questions of Dara Kenney, the State's witness. This testimony was heard by the jury:

Q. Miss Kenney, how often have you made purchases of marijuana for your own use?

A. Quite often when I was around fifteen and sixteen. When I was around sixteen I quit smoking.

Q. Okay. And after that, did you get involved in any other controlled substances?

A. Yes, I did.

Q. And what would that have been?

A. Cocaine.

\* \* \* \* \* \*

Q. In what amounts were you using it?

A. Anywhere from a gram a day to two grams a day.

Q. Okay. During any of the time that you were using either marijuana or cocaine, were you living with Mr. Pino?

A. Yes.

Q. All right. Have you ever used it in front of Mr. Jake Pino?

The testimony was stopped at this point by an objection from defense counsel. Defense counsel objected to the testimony because it related to uncharged misconduct. The district judge dismissed the jury while he considered the objection.

The district judge stated that the testimony so far had only been that Ms. Kenney lived with Mr. Pino and that she claimed to have taken drugs during that time. The judge inquired as to the prosecution's purpose in eliciting the testimony. The prosecution stated that the defense in opening statement directed their strategy at discrediting the State's witness, Ms. Kenney. Because the defense would be attacking Ms. Kenney's credibility, the prosecution wished to bring her prior drug use out on direct examination. The prosecution indicated that it would not be pursuing appellant's prior drug use further, and it would not be using it for any purpose

beyond bringing Ms. Kenney's prior drug use out on direct. After the jury returned to the courtroom, the prosecutor did start by repeating the question he had asked before the objection. However, the question was not allowed because defense counsel objected, and the district court sustained the objection.

Ms. Kenney's testimony did not introduce prior bad acts or uncharged misconduct. After being asked by the court, the prosecution explained that its purpose was to bring out Ms. Kenney's prior drug use on direct in order to minimize the effect of that information in cross-examination. Ms. Kenney did not testify about *appellant's prior drug use,* rather she explained *her prior drug use.* Since it was her prior uncharged bad act and not appellant's, W.R.E. 404(b) is not implicated. The district court properly handled this matter, and we find no error.

### OFFICER'S TESTIMONY

■ Appellant argues that the district court committed error when it allowed an officer to discuss the defendant's failure to cooperate and plead guilty like most criminal defendants do. Appellant's claim is stronger than the actual testimony.

A detective with the Laramie County Sheriff's Department was being questioned about his arrangements with the informant in this case, Dara Kenney.

Q. You heard Miss Kenney testify yesterday?

A. Yes, ma'am.

Q. Did you tell her that Jake Pino wouldn't be charged?

A. No, ma'am, I did not.

Q. Did you tell her anything that she could have interpreted as that?

A. She may have misinterpreted it. We discussed it at one point. She stated—when I first asked her who she could buy from, she said that she was a little hot in town right now because of our arresting her sister. I said, "Is there anyone that you know of right now that you could go out and purchase narcotics from?"

\* \* \* \* \* \*

Q. What did you tell her with regard to Jake being charged?

A. She was very concerned about him being charged. I stated to her that as long as everything worked out fine, if Jake would cooperate at the end, that maybe we could work out a deal with him.

\* \* \* \* \* \*

Q. Did you tell Dara that she would not have to testify?

A. No, I did not.

Q. What did you tell her with regard to testifying?

A. In ninety percent of the cases that we take to court, prior to last fall—

[DEFENSE COUNSEL]: Objection, 403. I guess I have a continuing objection on 403, but specifically on this, again 403.

THE COURT: Overruled. Go ahead.

A. I stated that in general narcotics cases that we have worked, the majority of them are worked out and the informant doesn't testify. There is a possibility that if it does go to trial, that she would have to.

Appellant cites *Stephens v. State*, 774 P.2d 60 (Wyo.1989) and *Bennett v. State*, 794 P.2d 879 (Wyo.1990). He argues that this court has reversed convictions when a witness was allowed to express an opinion on the defendant's guilt.

The situation that concerned us in *Bennett* and *Stephens* is not present here. In *Stephens*, three expert witnesses gave their opinion that the child had been sexually abused and that the defendant had done it. *Stephens*, 774 P.2d at 64–66. In *Bennett* a police officer gave his opinion that the defendant himself was a drug dealer and specifically linked the facts from his investigation to his conclusion that Bennett was a drug dealer. *Bennett*, 794 P.2d at 883. *See also Whiteplume v. State*, 841 P.2d 1332, 1337–41 (Wyo.1992).

The officer did not say "Jake Pino will plead guilty because we know that he is guilty." The officer merely indicated that very often criminal narcotics cases are resolved without the informant's testimony, although sometimes the informant's testi-

mony is required. That information did not in any way link appellant to guilt but merely informed the State's witness of the likelihood that she might have to testify. The prosecutor was not attempting to prove its case by relying on this type of indirect inference. Rather, the prosecutor was rebutting Ms. Kenney's earlier testimony in which she claimed that the officer told her that she would not have to testify.

■ The other testimony appellant cites deals with undercover drug operations generally and never mentions appellant's name in the context of being a suspected drug dealer. The officer's testimony speaks to the procedure for undercover narcotics investigations in general and not to appellant's conduct or guilt. Appellant also complains of testimony elicited from the State's witness about names of suspected drug dealers she supplied to the police. The State's witness did not list appellant's name. Although that testimony was probably not helpful to appellant, it was not unduly prejudicial. W.R.E. 403. We find no error in admitting any of this testimony.

In this case the officer never testified or offered a conclusion about whether appellant had sold drugs or was a drug dealer. Instead the officer merely related the facts of his investigation and left the conclusion for the jury. Appellant correctly argues that, if circumstances and testimony similar to that in *Bennett* or *Stephens* were present in this case, it would be error per se. However, no error appears in the record from this testimony.

### INSTRUCTIONS OFFERED BY DEFENDANT

■ Appellant argues that the district court improperly refused his tendered jury instruction. The tendered instruction read as follows:

### INSTRUCTION NO. 2

You have heard the testimony of a witness who has been promised that in exchange for testifying truthfully, completely, and fully, he will not be prosecuted for any crimes which he may have

admitted either here in court or in interviews with the prosecutors. This promise was not a formal order of immunity by the court, but was arranged directly between the witness and the government.

The government is permitted to make these kinds of promises and is entitled as witnesses people to whom these promises are given. You are instructed that you may convict a defendant on the basis of such a witness' testimony alone, if you find that his testimony proves the defendant guilty beyond a reasonable doubt.

However, the testimony of a witness who has been promised that he will not be prosecuted should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness' own interests; for, such a witness, confronted with the realization that he can win his own freedom by helping to convict another, has a motive to falsify his testimony.

Such testimony should be received by you with suspicion and you may give it such weight, if any, as you believe it deserves.

It appears that this proposed instruction was termed Proposed Instruction No. 3 at the instructions conference. As to proposed instruction no. 3, the following discussion took place:

THE COURT: Number three.

[DEFENSE COUNSEL]: Okay, that one I do want.

THE COURT: I'm going to refuse it. Does the State have any objection to it?

[PROSECUTION]: Yes, Your Honor.

THE COURT: I think when you talk about the credibility of the witness, you have to take into account all the facts and circumstances. That's why I'm going to refuse that.

[DEFENSE COUNSEL]: Your Honor, there is testimony of a person that is testifying for a deal. They have been promised they won't be prosecuted. The jury should be instructed that these people are testifying specifically for that kind of interest. Dara, for example, she is testifying so that she doesn't go to prison.

THE COURT: I think that Instruction 12B takes care of that in more general terms. That's why I'm giving Instruction 12B, to take care of that.

This court has recently held that a trial court may properly refuse an instruction which is argumentative or unduly emphasizes one aspect of the law. *Virgilio v. State*, 834 P.2d 1125, 1128 (Wyo.1992) (*citing Stapleman v. State*, 680 P.2d 73, 75 (Wyo.1984)). In addition, a trial court may refuse an instruction if the concept is covered by other instructions. *Virgilio*, at 1128 (*citing Griffin v. State*, 749 P.2d 246, 256 (Wyo.1988)). As the instructions conference indicates, the district court refused appellant's proffered instruction because the concept of a witness' testimony being biased because of a deal was already covered in instruction 12B.

Instruction 12B, which was given at trial, provided:

> The Jury is the sole judge of the credibility of the witnesses, and of the weight to be given their testimony. You should take into consideration their demeanor upon the witness stand, their apparent intelligence or lack of intelligence, their means of knowledge of the facts testified to, *the interest, if any, which any witness may have in the outcome of this trial, the prejudice or motives,* or feelings of revenge, *if any, which have been shown by the evidence.* In so doing, you may take into consideration all of the facts and circumstances in the case and give such weight as you think the same are entitled to, in the light of your experience and knowledge of human affairs.

(emphasis added) Instruction 12B instructed the jury on possible bias of informants and also left room for the defense to argue this issue in closing argument which they did. The court did not err in refusing appellant's proffered jury instruction.

## PROBATION REVOCATION

Appellant complains that his probation was revoked on the basis of this conviction and urges that if this conviction is reversed, then the probation revocation should be reversed since it rests upon this conviction. After considering appellant's claims of error with respect to this conviction, we have found no error. Since we affirm this conviction, the probation revocation was proper.

Appellant next alleges on appeal that the revocation, based on this conviction, was improper because there was no hearing. Here appellant, however, waived his opportunity to have a hearing or trial on the probation revocation.

■ The petition for revocation alleged that appellant had been convicted for delivery of marijuana in violation of his probation. The court specifically asked if appellant wished to have a trial on the petition for revocation of probation. Defense counsel responded: "No, Mr. Pino still denies the underlying facts, but it's difficult for him to deny the actual conviction. We were all in the courtroom." The district court found:

> I think the fact is that he was convicted in this court of a crime, which was in violation of the terms of his probation in 19–35. As to that, I think there are adequate grounds for revocation.

We have said: "In order to revoke probation all that is required is the court's conscientious judgment after hearing the evidence to the effect that a violation of probation has occurred." *Panesenko v. State,* 706 P.2d 273, 275 (Wyo.1985) (*citing Longwell v. State,* 705 P.2d 336 (Wyo.1985)). *See also Swackhammer v. State,* 808 P.2d 219, 224 (Wyo.1991). The district court properly revoked appellant's probation.

## FAILURE TO GRANT A NEW TRIAL

■ Appellant contends that the district court committed error by failing to grant a new trial. Appellant's chief accuser, Dara Kenney, testified at a suppression hearing several months after this trial. In the suppression hearing, appellant contends, Dara Kenney admitted that she lied in her testimony against appellant at his trial.

Initially we note that the decision of a district court on a motion for a new trial will be upheld absent an abuse of discretion. *Keene v. State,* 835 P.2d 341, 344 (Wyo.1992) (*quoting Brown v. State,* 816 P.2d 818, 822 (Wyo.1991)). Evidence supporting a motion for new trial must satisfy four factors:

> "(1) That the evidence has come to [appellant's] knowledge since the trial; (2) that it was not owing to the want of due diligence that it did not come sooner; (3) that it is so material that it would probably produce a different verdict, if the new trial were granted; and (4) that it is not cumulative, viz., speaking to facts in relation to which there was evidence at the trial."

*Keene,* 835 P.2d at 344 (*quoting Opie v. State,* 422 P.2d 84, 85 (Wyo.1967)).

The admission of perjury took place in the following exchange:

[PROSECUTOR]: Please listen to very carefully, Ms. Kenney, I want to make sure you understand me. Do you recall testifying under oath at both Pino trials?

A. Yes, I do.

Q. Do you recall testifying at both of those trials that you were searched both before and after each and every buy; do you recall that testimony?

A. Yes, I do.

Q. And now today you are saying that you only were searched before one of the buys?

A. Yes.

Q. So clearly you were committing perjury under oath at both Pino trials?

A. Yes, I was.

Q. Why did you say those things at those two prior trials, you lied under oath on those two occasions, why should we believe you today, Ms. Kenney?

[PROSECUTOR]: Nothing further, Your Honor.

[THE WITNESS]: Because Mark [an officer] asked me not to say anything about it.

Appellant argues that whether or not the officers searched Ms. Kenney prior to making the "buy" was crucial to their defense. Appellant claimed that Ms. Kenney set him up. Appellant's theory was that when Ms. Kenney was inside the high fence talking to her sister, out of sight of the officers, she got marijuana from her mother's house and gave that to the officers rather than obtaining the marijuana from Mr. Pino. Appellant insists that had the jury been aware of Ms. Kenney's later testimony that she was not searched, the jury would have returned a verdict in his favor.

We agree with the district court's decision not to grant a new trial. When the district court considered Ms. Kenney's testimony from the suppression hearing conducted prior to her trial, it noted that the evidence against appellant was not limited to the testimony of Dara Kenney. The jury heard the audiotape of the transaction which directly rebutted appellant's contention that Ms. Kenney had "planted" the marijuana on him in an effort to frame him.

This court has reviewed the entirety of the suppression hearing testimony. As the district court pointed out, at no point in the suppression hearing does Ms. Kenney recant the main substance of her testimony which was that appellant supplied the marijuana. Since Ms. Kenney only testified that the officers had not in fact searched her before each buy, the district court was "not convinced that a result other than conviction was probable." In addition, the district court properly viewed Ms. Kenney's suppression hearing testimony with suspicion since she had now been arrested and therefore was recanting portions of her earlier cooperation with the officers. The district court doubted the veracity of her statements at the suppression hearing.

We agree with the district court that Ms. Kenney's recantation would not have produced a different verdict. First, there is the audiotape recording of the transaction which establishes delivery by appellant. Second, Ms. Kenney went to her mother's house and into the backyard at appellant's urging. She did not have a pre-arranged plan to frame him with marijuana unless

appellant could demonstrate that Ms. Kenney would be able to anticipate the fortuitous event of something being wrong with appellant's tire during the drug deal. What we said in *Siegert* is applicable here: "This type of 'new evidence' is not sufficient to justify granting a new trial." *Siegert v. State*, 634 P.2d 323, 328 (Wyo.1981).

This "new" evidence would not have produced a different result. Thus, this evidence does not satisfy the requirements for granting a new trial. *Keene*, 835 P.2d at 344 (*quoting Opie v. State*, 422 P.2d 84, 85 (Wyo.1967)). The district court properly refused to grant a new trial.

### CONCLUSION

Appellant was not unduly prejudiced by the jury's use of an audiotape player in deliberations since the tape they reviewed was the tape of a criminal act and not testimonial. The district court's evidentiary rulings were correct on the uncharged misconduct issue and the officer's generic testimony about the probability of the informant testifying. The district court properly refused appellant's offered instruction about informants. Since we uphold this conviction, the probation revocation must also stand. After review of the additional materials made a part of this record, the district court's refusal to grant a new trial was correct. We find no error and affirm this conviction and revocation.

Affirmed.