27 P.3d 1249 (2001)
STATE of Washington, Respondent,
v.
Antonial Marquett MONROE, Appellant.
No. 46044-7-I.
Court of Appeals of Washington, Division 1.
July 30, 2001.
*1250 Eric Nielsen, Nielsen Browman & Assoc., PLLC, Seattle, for appellant.
Constance Crawley, Everett, WA, for respondent.
GROSSE, J.
A trial court has discretion to permit a jury to review witness testimony during its deliberations. However, that discretion is circumscribed by the concern that such a review does not unduly emphasize any portion of the testimony. Thus, in exercising discretion, the trial court must take into account the danger of undue emphasis and adopt safeguards appropriate to the particular facts and circumstances of the case. That did not occur here. Therefore, we reverse.

FACTS
MeLynda Karr and her 17-month-old daughter shared an apartment with her cousin Nicole Rundle, and another woman. On November 13, 1999, Rundle and several of her friends were eating at a nearby restaurant. They were approached by Karr and two of her friends which included Monroe. A misunderstanding arose and a fight ensued outside of the restaurant wherein several of Rundle's friends beat Monroe.
Later that evening when Rundle was at a friend's house an angry Monroe arrived and stated he was going to get her. The following evening he appeared at Karr's place of employment and over loud music she heard him say something to the effect that she better get home because bullets were going to fly. Karr called the police and then hurried home to check on her daughter.
When Karr arrived at the apartment she told Rundle and her other roommate that they needed to leave. Within a few minutes Jesse Ellion kicked in the apartment's door and entered carrying a rifle. Karr and Rundle did not know Ellion. He backed Karr towards her bedroom and as he did so she grabbed the rifle and the two struggled.
Monroe entered the unit and pushed Ellion off Karr. Karr grabbed her child and heard Monroe say something to the effect that she was not the one. Ellion kicked down the door to the bathroom where Rundle was hiding in the bathtub. Ellion pointed the rifle at Rundle. Monroe entered the bathroom and stated "that's the bitch" and he hit Rundle many times.
Officer Adams was the first officer to arrive at the apartment complex. He observed a silver sedan with its door open, motor running, and apparently unattended. As Officer Adams walked to the vehicle, Karr ran towards him screaming that someone was in the apartment and was going to kill Rundle. As Officer Adams approached the apartment, he saw two men leaving it, one of whom carried a rifle. The officer ordered them to stop which Monroe did, but Ellion ran back into the apartment, dropped the rifle, and jumped out the bedroom window. Adrian Cobbs testified that he was in the car with Ellion and Monroe when they arrived at the apartment complex. It was his belief that Ellion and Monroe went to the apartment to pick up some girls and he remained in the car while they entered the apartment. During trial, Cobbs testified as follows:
Q [By prosecuting attorney:] Now, prior to going to the apartment, did they go to another area of the car?
*1251 A [Cobbs:] The trunk.
Q Did they get something out of the trunk?
A I'm not sure. I guess I remembered they opened the trunk. The trunk closed.
Q If they got anything out of the trunk, did you see what it was?
A No.
The State charged Monroe with first degree burglary while he or an accomplice was armed with a firearm in violation of RCW 9A.52.020. After a two-day trial the jury began deliberations. During the first day the jury requested a copy of Rundle's testimony and made inquiries on accomplice liability. The trial judge told the jury to rely on its collective memory and the jury instructions.
On the afternoon of the second day, the jury announced that it was deadlocked and asked for direction. Shortly thereafter, the jury had a specific question regarding Cobbs' testimony. The court advised the jury to rely upon its collective memory. The jury tried to come to a decision but was still unable to do so. The foreperson reported that the prospects of a verdict were extremely dubious. The foreperson added that the jury might be able to reach a decision if it had more information in response to its questions.
The following morning the jury still could not reach a decision and the foreman indicated that the jury might reach a conclusion if the court provided it with a transcript of Cobbs' testimony. Defense counsel objected arguing that allowing the jury to view a transcript of Cobbs' testimony would unduly emphasize his testimony over that of other witnesses.
The court attempted to address these concerns by permitting the jury to read a copy of the transcript in the jury box, but did not allow it to retain the transcript while deliberating. After the court implemented this procedure, the jury was able to reach a verdict and convicted Monroe. This appeal followed.

DISCUSSION
Traditionally under common law, the trial court had no discretion to submit depositions and other testimonial materials to the jury room for unsupervised review by the jury even if those materials had been properly admitted into evidence at trial.[1] The purpose of this rule was to prevent juries from overemphasizing the submitted testimony to the detriment of the testimony that was not submitted.[2] The belief was that in the case of a lengthy trial, submitting the deposition testimony would likely cause it to overwhelm the jury's memory of the oral testimony.[3] While the original focus of the rule was on deposition testimony, transcripts of oral testimony given within court also fell under the rule.[4]
There are two important limits on the scope of the rule. Courts decline to apply it to any evidence that is not testimonial because the purpose of the rule only applies to testimonial evidence.[5] Courts have also limited its application to situations where the jury has unsupervised or unlimited access to the testimonial evidence. Thus, courts have not applied the rule where the trial court limited the jury's review of the evidence to open court when the parties were present, or where the court had control over the number of times the material was reviewed.[6] The reasoning behind this limit on the rule has been that when the trial court has not allowed the jury unrestricted access to the testimonial materials, the risk that the jury *1252 might give the evidence undue emphasis does not exist.[7]
CR 51(h) states:
Deliberation. After argument, the jury shall retire to consider its verdict. In addition to the written instructions given, the jury shall take with it all exhibits received in evidence, except depositions. Copies may be substituted for any parts of public records or private documents as ought not, in the opinion of the court, to be taken from the person having them in possession. Pleadings shall not go to the jury room.
(Emphasis added.)
This rule is the same today as it was when adopted in 1967.[8] The prohibition of depositions in the jury room has existed in Washington statutory law long before the adoption of the current rule.[9] While CR 51(h) expressly refers only to depositions, the court has also held that interrogatories fall within its scope.[10] Insofar as the court rule is an embodiment of the common law rule, it presumably would encompass testimonial transcripts just as the common law does.
Although no Washington court has expressly considered the common law rule, two Washington cases are relevant to the issue. In State v. Castellanos, the Supreme Court held that the trial court did not abuse its discretion by allowing the jury to have audio tapes that were contemporaneous recordings made during a drug transaction.[11] Although the jury had unlimited access to the tapes, the Supreme Court held that the trial court did not err because the tapes were not testimonial in nature but rather were substantive evidence.[12]
In another Washington case, State v. Koontz, the court affirmed a trial court's decision to allow a deadlocked jury to view the videotaped testimony of several witnesses.[13] The court in Koontz reasoned that the trial court did not abuse its discretion because it replayed the videotaped testimony of three different witnesses in open court in its entirety without interruption. The jury was deadlocked and would have otherwise been unable to reach a decision.[14] Thus, the court in Koontz adopted the position that the rule need not apply when the trial court takes reasonable measures to prevent the jury from placing undue emphasis on the replayed testimony. We believe that Koontz should control.
The court in Koontz held that the review of videotaped testimony was permissible because the review occurred in open court, the judge exercised control over the frequency with which the videotape was replayed, and how much opportunity the jury had to review the tapes. The trial court's exercise of control over the review was distinguishable from a jury having unrestricted and unsupervised access to the material in the jury room. Accordingly, the trial court in Koontz properly exercised its discretion because it controlled the review in a manner that did not permit the jury to place undue emphasis on the reviewed material.
While the transcript testimony here is different in form than videotaped testimony in Koontz, both are testimonial evidence. Here, the question is whether the actions *1253 taken by the trial judge prevented undue emphasis on Cobbs' testimony. We believe that did not occur for two reasons: (1) the trial court specifically stated that it did not agree with this concern; and (2) the manner in which the review occurred did overemphasize the testimony of one witness.
The trial judge made the following comments:
THE COURT: Yesterday afternoon at roughly 5:00 o'clock or a little before, following the last of several questions submitted by the jury, the one question came back indicating that they were deadlocked or unable to reach a decision and inquiring about what they should do. After they requested some additional time to deliberate and were given the better part of an hour after that, but still did not reach a decision and after the question about being unable to reach a decision, my recollection is that they submitted then another questiondo you have that question? And I'll read that question into the record, as soon as my law clerk receives it, but it was a fact specific question having to do with the testimony of one of the witnesses. And I sent back an answer to that question with the agreement of counsel, but the jury still did not reach a decision. For the record that last question was, "We have a question concerning Adrian C. testimony. It's a yes or no question. Can you check the testimony transcript of his testimony for us? It's just one statement that about half of us do not recall hearing. Did Adrian say both Jesse and Tony went to the trunk of the car?" The Court's answer given to them at 4:05, "You'll have to rely on your collective memory of the testimony of the witnesses."
The jury was brought back at about 5:00, though we did not have a court reporter present, we engaged, with counsel's consent, in some colloquy between the Court and the foreman, the presiding foreman of the jury. I expressed my preference for having the jury continue their deliberations this morning, if it may be possible to reach a decision. The foreman indicated that he felt reaching a decision was, if I recall, extremely dubious, but he also indicated if he could have more information in response to this or other questions the jury had submitted to the Court, it might be more likely for the jury to reach a decision.
The jury then came back this morning at about 9:00 o'clock to resume deliberations. It's now just after 10:10. And the jury still has not reached a decision. When the jury came back this morning at 9:00, I believe the presiding juror inquired of the clerk if the jury would get more information. It was not submitted in a written question. We did not answer that question other than to say that the Court was working on that question. I wanted to bring counsel back, because I think the question that the jury has posed brings into sharp focus what has been a problem, I think, with the prevailing practice of requiring that jurors rely on their own collective memory of the testimony of witnesses and not have that testimony repeated. And I think that's customarily done, at least in this County, if not state-wide, to not provide the jury of transcripts of portions of the testimony. The reasoning behind that practice seems to be a desire not to emphasize a portion of the evidence or the testimony of one witness over another. The logic of that practice escapes me, given the fact that in most cases the jury does have some evidence before them in the jury room with them throughout their deliberations and in this case is no different, they have a number of exhibits, including an assault rifle, photographs of the victim, that have been with them throughout the deliberations, and to deny them the opportunity to revisit the testimony of a witness where they have such a fact specific question strikes me as without any logical basis for drawing some distinction and not permitting them to revisit that testimony.
The critical issue is the extent of Monroe's knowledge of the weapon, its intended use, whether he engaged in the attack or tried to stop it, and Cobbs' testimony that Monroe and Ellion may have taken something from the trunk. Further, it appears that once the jury was provided a copy of Cobbs' testimony, it went straight to the portion containing the above statement. Moreover, the jury *1254 was deadlocked until it reviewed Cobbs' testimony. Clearly that testimony played an essential role in the ability of the jury to reach a verdict.
In addition, the jury had earlier asked to review Rundle's testimony which the court did not permit. Given that one of the critical issues was whether Monroe engaged in the attack or tried to stop it, Rundle's testimony regarding the events was critical. The trial judge should have at least considered including this testimony along with that of Cobbs' testimony.
The procedure used in this case allowed the jury to place undue emphasis on the testimony of one witness and that emphasis affected the verdict.
Monroe's conviction is reversed and the matter remanded.
NOTES
[1] Chambers v. State, 726 P.2d 1269, 1275 (Wyo. 1986).
[2] Chambers, 726 P.2d at 1275.
[3] See Welch v. Franklin Ins. Co., 23 W.Va. 288, 309-10 (1883).
[4] See United States v. Hernandez, 27 F.3d 1403 (9th Cir.1994); State v. Harris, 247 Mont. 405, 808 P.2d 453 (1991).
[5] See State v. Castellanos, 132 Wash.2d 94, 935 P.2d 1353 (1997); Pino v. State, 849 P.2d 716 (Wyo.1993) (admitting both audiotape of drug transaction and transcript thereof because the evidence was not testimonial).
[6] United States v. Montgomery, 150 F.3d 983 (9th Cir.1998); Chambers, 726 P.2d 1269.
[7] United States v. Shaw, 936 F.2d 412 (9th Cir. 1991).
[8] 4 Lewis H. Orland & Karl B. Tegland, Washington Practice: Rules Practice, at 447 (4th ed.1992).
[9] See Wintermute v. Standard Furniture Co., 53 Wash. 539, 540-41, 102 P. 443 (1909).
[10] See O'Mara v. Kroetch, 170 Wash. 440, 16 P.2d 818 (1932).
[11] Castellanos, 132 Wash.2d 94, 935 P.2d 1353.
[12] Castellanos, 132 Wash.2d at 101-02, 935 P.2d 1353. As authority for this distinction, Castellanos cited Pino, 849 P.2d at 719. The decision in Pino was explicitly made in reference to the common law rule that excludes testimonial evidence. The common law rule is well established in Wyoming law. See Chambers, 726 P.2d at 1275.
[13] State v. Koontz, 102 Wash.App. 309, 6 P.3d 1241 (2000).
[14] The court expressly noted that two of the witnesses gave exculpatory testimony and one gave inculpatory testimony. Thus, there was no risk of overemphasizing any particular witness or side of the case.