FILED
COURT OF APPEALS
DIVISION II

2013 OCT -8 AM 9: 25

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| STATE OF WASHINGTON, | No. 43208-1-II |
| --- | --- |
| Respondent, | |
| v. | |
| ZANE RYAN CAVENDER, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — After a jury found Zane Ryan Cavender guilty of residential burglary, he appealed claiming (1) prosecutorial misconduct, (2) a violation of the appearance of fairness doctrine, (3) ineffective assistance of counsel, and (4) insufficient evidence to support his conviction. We hold that (1) of the alleged misconduct preserved for review, Cavender fails to show the prosecutor committed reversible misconduct, (2) Cavender failed to preserve for review the alleged violation of the appearance of fairness doctrine, (3) his counsel was not ineffective, and (4) sufficient evidence supports his conviction. Accordingly, we affirm.

## FACTS

On May 23, 2011, barking dogs awakened Antonio Davila. Davila looked out his second story bedroom window toward the home's detached garage. Though he had locked his garage's entry door earlier that evening, he noticed that it was now ajar. He took a loaded pistol and went outside to investigate.

As Davila approached the garage, he heard movement coming from inside. He looked into the garage and saw two people. He ordered them to exit with their hands up and advised

them that he was armed. The two men did not comply, and instead moved about inside the garage and put their hands into their pockets. Moments later, the men ran from the garage, and Davila fired one shot at the first man before the man ran toward an adjacent alley. Davila also shot at the second man out, Cavender, who fell almost instantly.

After checking Cavender for weapons and seeing whether anyone else was hiding in the immediate area, Davila began treating Cavender's gunshot wound. Davila told his wife, Jennifer Vittetoe, to phone 911. When officers arrived, Vittetoe went to find her purse, which she kept on a hook near her home's back door, but it was missing. Vittetoe also noticed that a DVD player, normally stored downstairs, sat on the floor.

Authorities searched the scene and found the first man who had run from the garage, Anthony McDougald, dead from a gunshot wound to his back, in a nearby alley. McDougald was wearing blue rubber gloves and carrying a knife. He also had some of Davila's and Vittetoe's property, including credit cards, Davila's sweatshirt, keys, and a metal carabiner attachment that Vittetoe used to hold her keys. Cavender was wearing gloves and carrying a screwdriver, knife, hypodermic needle, and flashlight. They also found him with Vittetoe's Barnes and Noble gift card.

The State charged Cavender with residential burglary[1] and added aggravating factors because the victims were present during the burglary,[2] and Cavender committed the burglary

---

[1] RCW 9A.52.025. In the alternative, the State charged Cavender with second degree burglary, including the same aggravators.

[2] RCW 9.94A.535(3)(u).

No. 43208-1-II

shortly after being released from prison.[3]  At trial, while questioning Tacoma Police Officer

Brandon Cockcroft about his interview with Cavender at the hospital, the prosecutor asked,

> Q. Okay. Did he [Cavender] agree to speak with you [after being advised of his rights]?
> A. He didn't say he didn't want to initially, no.
> Q. Did you ask him questions about the investigation?
> A. I asked him what happened.
> Q. And what did he tell you?
> A. He said, "Some dude shot me in the back."
> Q. Did he offer any further explanation about how some "dude" had shot him in the back?
> A. At that point he elected to no longer answer my questions.

2 Verbatim Report of Proceedings (VRP) at 261. Cavender did not object to this exchange.

Later, the prosecutor asked Tacoma Police Homicide Detective Brian Vold if homicide

investigations ever result in criminal charges not being filed, and Detective Vold responded,

"Yes, when it's a legal, justifiable homicide." 2 VRP at 300. Detective Vold then explained that

dispatchers typically send homicide detectives to the scene of an alleged homicide to "confirm

that what you've been told initially [upon arrival at the scene] does make sense." 2 VRP at 301.

He added that investigators confirm the alleged events independently by interviews and on-scene

investigation. The prosecutor then asked Detective Vold whether Davila was ever charged with

a crime, and Detective Vold responded negatively. The prosecutor also asked Tacoma Police

Detective Jack Nasworthy if the State had charged Davila for the homicide, and Detective

Nasworthy responded negatively. Cavender did not object to any of this testimony, nor did he

testify.

---

[3] RCW 9.94A.535(3)(t).

During closing, the prosecutor stated that Davila was "the only witness who witnessed all of the events leading up to the arrest and criminal charges of Zane Cavender that testified in this courtroom." 3 VRP at 596. Toward the end of its argument, the prosecutor stated:

> This is a case about a burglary, members of the jury. Zane Cavender is charged with residential burglary and burglary in the second degree. This is not a homicide trial. The detectives went on to investigate this as a homicide because there was a killing of a human being. Tony McDougald was shot and died there at the scene, and so they investigated this as if there is a potential that somebody could be criminally charged. It is clear who fired the shots that killed Tony McDougald. That was not in issue and was not in dispute ever. They investigated his story. They investigated the crime s[c]ene. They treated this like a homicide investigation, and Tony Davila wasn't charged. The person that was charged with the crime you are here to decide is Zane Cavender. He is charged with the burglary. It's not State v[.] Tony Davila. The evidence in this case, there is no evidence to contradict what Tony Davila told you had occurred that day. Nothing. Every bit of evidence that was introduced by Tony Davila was corroborated by the other witnesses who were involved in this investigation, and the other witnesses concluding this is a burglary.

3 VRP at 605-06. Cavender did not object to this argument.

Then during rebuttal closing, the prosecutor argued that the jury should rely on "what was presented on the witness stand and the exhibits admitted into evidence for you to make a determination [as] to what happened this night." 3 VRP at 632. She reminded the jury that Davila had "testified, and the evidence that we have is the testimony of Tony and you get to determine his credibility." 3 VRP at 636. And responding to Cavender's argument that perhaps that was not Vittetoe's gift card on Cavender, the prosecutor argued that there was "no evidence before you that Mr. Cavender ever owned a Barnes and Noble gift card." 3 VRP at 637. Cavender did not object to this argument.

The jury found Cavender guilty of residential burglary and found by special verdict that he committed the burglary with the victims present. After Cavender then waived his jury trial

right, the trial court found that he committed the burglary shortly after being released from incarceration. The trial court made a finding of rapid recidivism after the parties stipulated that Cavender had committed the burglary 31 days after being released from custody.

At sentencing, the trial court heard Davila's victim impact statement. The trial court sympathized with the victims:

> I have been a victim of having a sawed off shotgun pointed to my left temple while I was on my stomach in a beauty shop, and even though that happened—let's see, my son was born and he was only three months old. So that happened in 1989. I still remember it quite vividly, and I'm sure the ramification on you and your wife is not going to end even with sentencing. It is something that you are going to have to deal with and may have to seek some professional counseling in order to deal with that situation. There are little things that can trigger that memory, as easily as someone opening up a door or your putting your purse on that hook behind the door.

3 VRP at 667. The trial court concluded, "I have limited control pursuant to statute as to what kind of sentence I can impose. I want to thank you for your willingness and courage to come here today to confront the Defendant. Thank you." 3 VRP at 668. Cavender raised no objection to the trial court's statement.

The trial court found Cavender's standard range was 22 to 29 months. The range for an exceptional sentence was 29 to 120 months. The trial court sentenced Cavender to 116 months, citing the two aggravators to justify the exceptional sentence. Cavender appeals.

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Cavender first argues that the State committed prosecutorial misconduct because it improperly (1) elicited testimony that Cavender had invoked his right to silence, (2) vouched for the credibility of law enforcement witnesses and implied that Cavender was guilty because the

5

State had not pursued homicide charges against Davila, and (3) commented on Cavender's failure to present evidence in his own defense. Of the alleged instances of misconduct preserved for appeal, none constitute reversible error.

## A. Right to Silence

First, Cavender claims that the prosecutor committed misconduct by improperly eliciting testimony that Cavender invoked his right to silence. Because overwhelming evidence supports Cavender's conviction and any rational trier of fact would have reached the same conclusion, any alleged error touching on Cavender's right to postarrest silence was harmless beyond a reasonable doubt and does not warrant reversal.

During its case in chief, the State may not use evidence of a defendant's silence either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). When a defendant's silence is raised at trial, we consider whether the prosecutor manifestly intended the remarks to be a comment on that right. *State v. Burke*, 163 Wn.2d 204, 216, 181 P.3d 1 (2008). "[C]omment" means the State uses the accused's silence to suggest to the jury that the refusal to talk is an admission of guilt. *Lewis*, 130 Wn.2d at 707. A mere reference to silence which is a not a "comment" on the silence is not reversible error absent a showing of prejudice. *See Lewis*, 130 Wn.2d at 706-07.

Eliciting testimony about and commenting on a suspect's postarrest silence or partial silence is constitutional error and subject to our stringent constitutional harmless error standard. *State v. Easter*, 130 Wn.2d 228, 236-37, 242, 922 P.2d 1285 (1996). Under this standard, we presume constitutional errors are harmful and reverse and remand for a new trial unless the State meets the heavy burden of establishing that the constitutional error was harmless beyond a

reasonable doubt. *Easter*, 130 Wn.2d at 242. A constitutional error is harmless beyond a reasonable doubt only if the evidence is so overwhelming that any rational trier of fact would necessarily have found the defendant guilty. *Easter*, 130 Wn.2d at 242.

Here, Cavender claims that the prosecutor improperly questioned Officer Cockcroft. Officer Cockcroft testified that when he interviewed Cavender, Cavender explained that someone shot him in the back. Then the prosecutor asked Officer Cockcroft a yes/no question, "Did [Cavender] offer any further explanation about how some 'dude' had shot him in the back?" 2 VRP at 261. Officer Cockcroft answered nonresponsively, without objection, "At that point he elected to no longer answer my questions." 2 VRP at 261.

To support his claim that this is a comment on his right to remain silent, Cavender cites and analyzes a series of cases, including *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and *Easter*, 130 Wn.2d 228. They all differ significantly from the present matter.

In *Doyle*, while on trial for a criminal drug charge, the defendant and codefendant claimed they had been framed. 426 U.S. 611-13. They had declined to say anything upon arrest, but at trial, the prosecutor attempted to elicit testimony to impeach the defendants by questioning why they had not initially told police that they had been framed. *Doyle*, 426 U.S. 613-14. The Court held that the questioning violated the defendant's Fourteenth Amendment due process rights, and the Court reversed the defendants' convictions. *Doyle*, 426 U.S. at 619-20. Unlike *Doyle*, however, here the State did not repeatedly ask questions designed to elicit a response focusing on the defendant's right to silence. Here, as soon as Officer Cockcroft stated, nonresponsively to a yes/no question, that Cavender had invoked his rights, unlike in *Doyle*, the prosecutor transitioned away from this line of questioning.

7

In *Easter*, our Supreme Court held that the prosecutor violated Easter's prearrest Fifth Amendment right to silence when it elicited an officer's testimony, over defense counsel's unsuccessful objection, that the defendant "totally ignored" his questions at the crime scene and when asked additional questions, looked down, "once again ignoring me, ignoring my questions." 130 Wn.2d at 232, 235. The officer also testified regarding the defendant's evasiveness and unwillingness to communicate with him at the scene. *Easter*, 130 Wn.2d at 233.

Our Supreme Court held that this testimony improperly characterized Easter's silence as evasive and evidence of his guilt. *Easter*, 130 Wn.2d at 235. *Easter*, too, differs from the present matter because there, the prosecutor's questions elicited testimony about the defendant acting evasive, like a "smart drunk" attempting to avoid responsibility for his conduct. 130 Wn.2d 233. Here, neither Officer Cockcroft nor the prosecutor blatantly implied Cavender's guilt during this questioning; Officer Cockcroft simply stated that Cavender initially participated in the interview but then "elected to no longer answer my questions." 2 VRP at 261.

Here, we will assume, without deciding, that Officer Cockcroft's testimony touched on Cavender's partial postarrest silence and apply the constitutional harmless error standard. We thus presume reversible error unless the evidence is so overwhelming that any rational trier of fact would necessarily have found Cavender guilty. *See Easter*, 130 Wn.2d at 242. Such overwhelming evidence is present here.

Specifically, Davila found Cavender in his garage without permission to be there. Cavender and McDougald both wore gloves and carried knives; Cavender also carried a flashlight, as well as a flathead screwdriver—burglary tools. After Davila called to Cavender and McDougald in the garage, the two men attempted to flee. Also, some of Davila's and

8

Vittetoe's property was missing from their home, including Vittetoe's purse and its contents; and, from Cavender and McDougald, authorities recovered some of this property—credit cards, a gift card, and keys, among other items. In light of this overwhelming evidence demonstrating Cavender's guilt, we hold that any rational trier of fact would necessarily have found Cavender guilty of residential burglary. Accordingly, any error related to an improper comment on Cavender's postarrest silence was harmless beyond a reasonable doubt.

## B. Alleged Vouching

Next, Cavender contends that the prosecutor improperly vouched for the State's witnesses and its theory of the case. Cavender failed to preserve this issue for appeal.

Improper vouching generally occurs if the prosecutor expresses her personal belief as to the veracity of the witness or indicates that evidence not presented at trial supports the witness's testimony. *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). Prosecutors, however, enjoy wide latitude to argue reasonable inferences from the facts concerning witness credibility, and we will not find prejudicial error unless it is clear and unmistakable that counsel is expressing a personal opinion. *State v. Allen*, 176 Wn.2d 611, 631, 294 P.3d 679 (2013). And, alleged improper opinion testimony does not constitute manifest constitutional error unless the prosecutor clearly and expressly vouches for a witness's credibility. *See State v. Kirkman*, 159 Wn.2d 918, 929-30, 155 P.3d 125 (2007). So, to challenge alleged instances of vouching for the first time on appeal, an appellant must demonstrate that the prosecutor clearly and expressly vouched for a witness's credibility. *See* RAP 2.5; *Kirkman*, 159 Wn.2d at 929-30.

Here, Cavender asserts that the prosecutor first improperly bolstered the State's case and vouched for Davila's credibility when, without objection, it asked Detective Vold questions that

elicited testimony that homicide investigations do not result in criminal charges in cases of legal, justifiable homicide. Second, he claims the prosecutor repeated this misconduct when, without objection, it asked a question eliciting Detective Nasworthy's testimony that the State had not charged Davila with a homicide. Third, Cavender claims that the prosecutor improperly vouched for Davila's credibility during closing when it argued, without objection, that investigators concluded their work and the State ultimately charged Cavender with burglary and decided not to charge Davila with homicide. Cavender contends that, in these three instances, the prosecutor improperly argued that the State believed Davila's version of events, vouching for his credibility.

In each of these episodes of alleged vouching, Cavender did not object. So, Cavender failed to preserve this issue unless he can establish that the prosecutor or witnesses expressly vouched for Davila's credibility. But here, the alleged misconduct was buried in logical leaps rather than express opinions. Cavender does not demonstrate that the prosecutor or any of the State's witnesses personally opined regarding Davila's credibility. Detectives Vold and Nasworthy simply testified that the State had not charged Davila with homicide. They were not expressing personal opinions regarding Davila's credibility; and, the prosecutor also did not clearly and unmistakably opine regarding Davila's credibility in its questioning of the detectives or in its arguments. The prosecutor elicited factual information. Accordingly, because he fails to demonstrate that the prosecutor expressly vouched for a witness's credibility, Cavender did not preserve this issue for appeal. RAP 2.5; *Kirkman*, 159 Wn.2d at 929-30.

C. Commenting on Cavender's Failure to Present Evidence

Next, Cavender claims that the prosecutor improperly shifted the burden to the defense to produce exculpatory evidence. Again, Cavender failed to preserve this issue for appeal.

Generally, a prosecutor cannot comment on the lack of defense evidence because the defense has no duty to present evidence. *State v. Thorgerson*, 172 Wn.2d 438, 467, 258 P.3d 43 (2011). But the mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense. *State v. Jackson*, 150 Wn. App. 877, 885-86, 209 P.3d 553, *review denied*, 167 Wn.2d 1007 (2009). In fact, a prosecutor is entitled to point out a lack of evidentiary support for the defendant's theory of the case. *State v. Killingsworth*, 166 Wn. App. 283, 291-92, 269 P.3d 1064, *review denied*, 174 Wn.2d 1007 (2012).

If a defendant fails to object to alleged improper burden shifting at trial, he fails to preserve the issue unless he establishes that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). We focus less on whether the prosecutor's misconduct was flagrant and ill intentioned and more on whether the resulting prejudice could have been cured. *Emery*, 174 Wn.2d at 762.

Cavender cites *State v. Fiallo-Lopez*, 78 Wn. App. 717, 899 P.2d 1294 (1995). There, the State charged Fiallo-Lopez after he was involved with an undercover drug transaction. *Fiallo-Lopez*, 78 Wn. App. at 719-20. At trial, a police informant testified, as did two detectives. *Fiallo-Lopez*, 78 Wn. App. at 720-21. Fiallo-Lopez did not testify. *Fiallo-Lopez*, 78 Wn. App. at 728. During closing, the prosecutor argued that "absolutely" no evidence explained why Fiallo-Lopez was present, first at a restaurant where the drug transaction began and then at Safeway, where it continued, or why he had contact with the drug seller at both places. *Fiallo-Lopez*, 78 Wn. App. at 729. The prosecutor also contended that Fiallo-Lopez had not attempted

to rebut the State's evidence regarding his involvement in the drug deal. *Fiallo-Lopez*, 78 Wn. App. at 729. Division One held that because the argument improperly commented on Fiallo-Lopez's right not to testify at trial, it impermissibly shifted the burden of proof to the defendant. *Fiallo-Lopez*, 78 Wn. App. at 729.

The misconduct in *Fiallo-Lopez* differs because it occurred during closing argument, whereas here, the alleged misconduct took place during rebuttal closing, in response to Cavender's closing argument. Here, the prosecutor first told the jury that it should rely on the evidence presented on the witness stand and the admitted exhibits in reaching its determination.

This argument does not shift the burden to the defense; in fact, the trial court similarly instructed the jury to consider only "the testimony that you have heard from witnesses, stipulations, and the exhibits that I have admitted, during the trial." CP at 14 (Instruction No. 1). Therefore, this argument does not constitute improper misconduct. The prosecutor also added that Davila had testified, and the jury was to determine his credibility. Again, unlike *Fiallo-Lopez*, this is an accurate recounting of the trial events and the instruction that the jury should consider the evidence and make credibility determinations.

Finally, the prosecutor responded to Cavender's closing argument, in which defense counsel pontificated that the gift card found on Cavender after the burglary may not have been Vittetoe's. The prosecutor argued that there was "no evidence before you that Mr. Cavender ever owned a Barnes and Noble gift card." 3 VRP at 637. Again, unlike *Fiallo-Lopez*, here the State responded to the defendant's argument to undermine the defense theory, which it may do. *See Killingsworth*, 166 Wn. App. at 291-92. Accordingly, this matter differs from *Fiallo-Lopez*.

Because Cavender failed to object to this alleged misconduct at trial, he did not preserve the issue for appeal unless he could establish that the alleged misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice. *Emery*, 174 Wn.2d at 760-61. He does not do so. Because the State did not commit any misconduct, and either accurately restated the duties of the State, defense, and jury, or fairly responded to defense counsel's arguments, he cannot show how this alleged misconduct was improper, unfairly prejudicial, or incurable by an instruction. Even had he preserved this issue, he could not have shown error.

## II. APPEARANCE OF FAIRNESS

Cavender next argues that the trial court violated the appearance of fairness doctrine when it imposed an exceptional sentence and expressed empathy for the burglary victims. Cavender did not preserve this issue for appeal.

An appearance of fairness claim is not "constitutional" under RAP 2.5(a)(3) and, thus, may not be raised for the first time on appeal. *State v. Morgensen*, 148 Wn. App. 81, 90-91, 197 P.3d 715 (2008), *review denied*, 166 Wn.2d 1007 (2009); *see also City of Bellevue v. King County Boundary Review Bd.*, 90 Wn.2d 856, 863, 586 P.2d 470 (1978) ("Our appearance of fairness doctrine, though related to concerns dealing with due process considerations, is not constitutionally based."). Because Cavender did not object at trial, claiming a violation of the appearance of fairness doctrine, he may not now raise this issue. RAP 2.5(a)(3); *see Morgensen*, 148 Wn. App. at 90-91.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Cavender next claims ineffective assistance of counsel because defense counsel failed to object to the prosecutor's alleged misconduct. We disagree.

To show ineffective assistance of counsel, a defendant must show that (1) his lawyer's representation was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Representation is deficient if it falls below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice occurs when but for counsel's deficient performance, the proceeding's result would have been different. *McFarland*, 127 Wn.2d at 335. If a party fails to satisfy one prong, we need not consider the other. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

We are highly deferential to counsel's performance, that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. Tactical decisions cannot form the basis for a claim of ineffective assistance of counsel. *McFarland*, 127 Wn.2d at 336.

Cavender must show that defense counsel provided ineffective assistance by failing to object to the alleged prosecutorial misconduct; and he must show that not objecting could not have been a tactical decision. Here, the alleged misconduct included the prosecutor improperly (1) eliciting testimony intended to comment on Cavender's right to silence; (2) vouching for the State's witness, Davila; and (3) implying that the defense had a duty to present evidence.

First, regarding the testimony regarding Cavender invoking his silence, defense counsel could have exercised tactical judgment to not draw further attention to the comment, particularly since the State quickly moved on to a different subject. Because tactical reasoning could justify

not objecting to a yes/no question that resulted in a non-responsive answer, Cavender cannot show deficient performance. *See McFarland*, 127 Wn.2d at 336.

Regarding the second instance, because neither the prosecutor nor her witnesses personally opined regarding Davila's credibility, they were not improperly vouching, so any objection would have been futile. Thus, Cavender cannot show deficient performance or prejudice.

Regarding the third instance, the prosecutor fairly responded, in rebuttal closing, to Cavender's defense theory and then properly restated the law as outlined in the trial court's own instructions. Therefore, any objection would have, again, been futile. Absent a showing of deficient performance or resulting prejudice, Cavender cannot carry his burden to show ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687.

IV. Sufficiency of the Evidence

In his statement of additional grounds, Cavender claims that the State presented insufficient evidence to prove that he committed residential burglary. He then asserts that his defense counsel offered ineffective assistance for failing to move to dismiss the charge due to this insufficient evidence. Cavender does not demonstrate error.

We review insufficient evidence claims for whether, when viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Sufficiency challenges admit the truth of the State's evidence and all reasonable inferences drawn from it. *Salinas*, 119 Wn.2d at 201.

15

The trier of fact makes credibility determinations that we will not review. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

A person is guilty of residential burglary if a person (1) enters or remains unlawfully in a dwelling other than a vehicle (2) with intent to commit a crime against a person or property therein. RCW 9A.52.025(1). A "[d]welling" is any building or structure used or ordinarily used by a person for lodging. RCW 9A.04.110(7).

Here, Cavender claims that the State failed to prove that he committed residential burglary. Direct and circumstantial evidence does, however, satisfy each element to prove residential burglary.

First, the State showed that Cavender or McDougald entered or remained unlawfully in Davila and Vittetoe's house.[4] Davila stated that he had not granted Cavender nor McDougald permission to be in his home. Vittetoe testified that her purse and keys, which she hung near her back door, were missing from their usual location following the incident. And a DVD player typically stored on a shelf was on the floor. A jury could infer from this evidence that someone unlawfully entered or remained in Davila and Vittetoe's home, a dwelling.

Second, the State showed that Cavender or McDougald intended to commit a crime against a person or property therein. Because the suspects attempted to flee the garage and wore gloves and carried a flashlight, flathead screwdriver, and knives—burglary tools —the jury could

---

[4] Attached garages constitute part of a victim's dwelling for residential burglary purposes. *See, e.g., State v. Murbach*, 68 Wn. App. 509, 513, 843 P.2d 551 (1993). Because the garage here was detached, the defendants' presence in the garage does not prove residential burglary.

16

reasonably infer that Cavender and McDougald intended to commit a criminal act at the home. Also, officers found some of Vittetoe's property from her missing purse on Cavender and McDougald, including her gift card, credit cards, keys, and a caribiner. From this evidence, the jury could reasonably infer that Cavender or McDougald intended to commit a crime against a person or property. Accordingly, viewing this evidence in a light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of residential burglary beyond a reasonable doubt.

And because the State presented sufficient evidence to prove residential burglary, Cavender's defense counsel did not provide ineffective assistance by failing to move to dismiss the charge for lack of evidence because any motion would have been futile.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, A.C.J.

We concur:

Penoyar, J.

Bjorgen, J.

17