[No. 70861-4.   En Banc.]
Argued October 25, 2001.      Decided March 7, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. MATTHEW W. KOONTZ, *Petitioner*.

*Matthew W. Koontz*, pro se.

*Suzanne L. Elliott*, for petitioner.

*Arthur D. Curtis, Prosecuting Attorney*, and *Kelli E. Osler, Deputy*, for respondent.

JOHNSON, J. — This case considers whether, and under what circumstances, a jury may review videotape recordings of trial testimony during its deliberations. The petitioner in this case was convicted of second degree assault of a minor after the jury reviewed the videotaped transcript of three witnesses' entire testimony. The conviction was affirmed by the Court of Appeals. We reverse the Court of Appeals and remand for a new trial.

## FACTS

Videotape, rather than written transcription, was used to record the proceedings of Matthew Koontz's (Koontz) trial for second degree assault of a minor, S.B.H. Approximately three hours after the jury began its deliberations, the presiding juror informed the judge by note that the jury wished to review the videotaped testimony of three witnesses to break an apparent deadlock. The note indicated the jury was divided evenly with six jurors voting guilty and six jurors voting not guilty.

The testimony the jury requested to review had been given by witnesses Judyanne Henderson (Henderson); S.F.,

a minor; and Koontz. Henderson, Koontz's mother-in-law, operated the day care where S.B.H. was allegedly assaulted. Henderson discovered S.B.H.'s injuries. Henderson testified for the prosecution but was viewed as a hostile witness. Henderson testified she had not committed the assault and had seen Koontz with S.B.H. S.F., a six-year-old child who attended Henderson's day care, also testified for the prosecution. S.F.'s testimony concerned the timing of Koontz's and Henderson's entrances into the room where S.B.H. had been napping before her injuries were discovered. Koontz was the sole witness for the defense. Koontz testified he had not had an opportunity to assault S.B.H.

The trial judge initially denied the jury's request. The judge spoke with the presiding juror and asked her to return to the jury room and help determine whether the jury could "work toward a unanimous verdict." 3 Report of Proceedings (RP) at 422. Shortly after this instruction was given, the presiding juror returned. She informed the court the jurors who were ready to render a verdict believed Koontz was guilty but the jurors who felt they did not have enough information favored rendering a not guilty verdict. The presiding juror remarked the videotaped testimony would help the jurors consider "facial expressions and whatnot." 3 RP at 423. She concluded, "the jurors basically feel like without more information, or reviewing testimony or any of that, they don't feel that they can at this time or a later time come out of their deadlock." 3 RP at 423.

Defense counsel objected, arguing the video replay would unduly emphasize the testimony of the witnesses. However, the trial judge decided to replay the entire testimony of all three witnesses over this objection. The judge controlled the video replay and instructed the jury not to place undue emphasis on the testimony. The videotapes were played in open court with the defendant and counsel present.

A review of the videotaped testimony shows it was not a single continuous view of each witness testifying. Instead, the videotaped testimony consisted of a series of camera perspectives, filmed by several video cameras, with camera

focus moving between the witness testifying, the prosecutor, defense counsel, Koontz, and the trial judge.[1] The video included downward views of the defendant sitting alone at the defense table while no witness was testifying. During both Henderson's and S.F.'s testimony, the video included views of the defendant even though defense counsel was not examining witnesses or objecting to witness testimony.

Soon after the video testimony was replayed, the jury returned with a guilty verdict. The Court of Appeals affirmed. *State v. Koontz*, 102 Wn. App. 309, 6 P.3d 1241 (2000). This appeal was granted on the sole issue of whether, and under what circumstances, a jury may review videotaped recordings of trial testimony during its deliberations. This is a question of first impression in Washington.

## ANALYSIS

We begin our analysis with the fundamental principles governing any jury review of trial testimony during deliberations. The Sixth and Fourteenth Amendments to the United States Constitution and Washington Constitution article I, section 22 guarantee a defendant the right to a fair and impartial jury. *State v. Davis*, 141 Wn.2d 798, 824, 10 P.3d 977 (2000). The right to a fair and impartial jury is protected by the procedures contained in chapter 4.44 RCW and by court rule. These protections govern not only the information that may be conveyed to a jury, but also the manner in which the information may be delivered. During deliberations, limitations on outside contact are especially restrictive because at that point the jury is engaged in judging the facts. *See, e.g.*, RCW 4.44.300 (care of jury while deliberating); CrR 6.7 (custody of jury); CrR 6.15(f)(2) (jury instructions not allowed during deliberations). The pattern

---

[1] Superior Court Civil Rule 80 authorizes the use of videotape equipment. CR 80. Generally, a courtroom will have three or five videocassette recorders (VCRs) and at least five video cameras. The videotape equipment is set up to automatically focus on the person who is talking. VCRs may be controlled through the use of a remote control device located at the bench, which can also lock a video camera onto a specific position, no matter who is speaking. OFFICE OF THE ADMINISTRATOR FOR THE COURTS, VIDEOTAPED TRIAL RECORDS IN WASHINGTON STATE (1990).

jury instructions reflect this concern. Prospective jurors are advised they will not be provided with a written copy of the testimony during deliberations. 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.01 (2d ed. 1994) (WPIC); WPIC 1.02. Other pattern jury instructions reinforce the manner in which questions of fact or law that the jury may have should be addressed once deliberations have begun. *See generally* WPIC 4.67 (questions by jury addressed to court); WPIC 4.68 (additional instructions of law); WPIC 4.70 (probability of verdict).

Viewed in light of the principle that a jury must remain impartial as it determines the facts, reading back testimony during deliberations is disfavored. *United States v. Portac, Inc.*, 869 F.2d 1288, 1295 (9th Cir. 1989). Whether a jury should reread transcripts is dependent upon the particular facts and circumstances of the case and must be weighed against the danger that the jury " 'may place undue emphasis on testimony considered a second time at such a late stage of the trial.' " *United States v. Montgomery*, 150 F.3d 983, 999 (9th Cir. 1998) (quoting *United States v. Sacco*, 869 F.2d 499, 501 (9th Cir. 1989)).

Having examined the general rules governing a jury's review of testimony, we now turn to the nature of video-taped testimony. In particular, we consider the nature of a videotape recording of testimony originally presented in open court. A videotape record does not duplicate the perspective or view of the jurors during trial. A video record, consisting of a series of perspectives moving between different trial participants, may focus on things the jurors did not consider during trial. This alters an individual juror's perspective during the replay. A juror's attention is captured by the camera's focus rather than directed by the juror's focus. In essence, the jury gets a different view of the trial. While this may provide a more faithful record in some respects, it may also heighten elements disregarded by the jurors during the trial. To the extent the videotape represents a change in media, the change may even alter the

intuitive clues allowing the jurors to determine credibility.[2] Reviewing videotaped testimony raises greater concerns than reading from a transcript because videotaped testimony allows the jury to hear and see more than the factual elements contained in a transcript.

A competing tension between the nature of jury deliberations and the nature of videotaped testimony animates the two Ninth Circuit cases relied upon by the Court of Appeals. In the first of these cases, the Ninth Circuit Court of Appeals examined a challenge to the replay of a child victim's videotaped testimony concerning sexual abuse by the defendant. *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985). In *Binder*, there was no physical evidence directly linking the defendant to the alleged sexual abuse. The prosecution presented seven witnesses in addition to the two child victims testifying by videotape, but none of the witnesses could corroborate the children's specific allegations. The defendant testified in his own defense and denied any criminal conduct. The defendant asserted the children were acting vindictively. The videotape was played in the jury room rather than open court and the jury was allowed to review the video in an abridged fashion.

The Ninth Circuit held that replaying the videotaped testimony was an abuse of discretion. *Binder*, 769 F.2d at 598. The court determined that allowing the jury to see and hear the children's videotaped testimony a second time during deliberations unduly emphasized their testimony. *Binder*, 769 F.2d at 601. In addition to the effect the video

---

[2] *See* Fredric I. Lederer, *The Road to the Virtual Courtroom? A Consideration of Today's—and Tomorrow's—High-Technology Courtrooms*, 50 S.C. L. Rev. 799, 808-12 (videotape's use in trial transcripts nationally), 818-19 (need for further research into use of video transcripts during jury deliberations) (1999). *See generally* Peter David Blanck, *Calibrating the Scales of Justice: Studying Judges' Behavior in Bench Trials*, 68 Ind. L.J. 1119, 1120-21 (1993) (testing the conclusion that nonverbal communications impact trial outcomes); Gerald R. Miller et al., *Using Videotape in the Courtroom: A Four-Year Test Pattern*, U. Det. Urb. L. 655, 676 (1978) (noting the process of editing impacts juror determinations of credibility); Gerald R. Williams et al., *Juror Perceptions of Trial Testimony as a Function of the Method of Presentation: A Comparison of Live, Color Video, Black-and-White Video, Audio, and Transcript Presentations*, 1975 BYU L. Rev. 375, 410-12 (1978) (finding significant differences in juror response to live and videotaped testimony).

replay had on the defense's case, the court emphasized that, by allowing the jury to view the tape in the jury room and in an abridged form, the manner of replay constituted harmful error. *Binder*, 769 F.2d at 602.

The Ninth Circuit's second case addressing the replay of videotaped testimony analyzed a replay of the videotaped deposition of an unavailable material witness admitted at trial. *Sacco*, 869 F.2d at 500. In *Sacco*, the defendant was accused of transporting more than $10,000 across the United States/Canada border and of making false statements to customs officials. The two customs agents who had observed the defendant near the money testified against him. The defendant did not testify but two witnesses testified for him in rebuttal. The witnesses asserted they were the owners of the cash and the defendant had not been told it was in his car. There was concrete physical evidence linking the defendant to the money.

The Ninth Circuit held the trial court did not abuse its discretion because the replay of the videotaped testimony did not effectively repeat the entirety of the government's case. *Sacco*, 869 F.2d at 502. In its analysis, the court noted the verdict did not turn solely on the defendant's credibility because there was a sufficient quantum of evidence other than the videotaped testimony linking the defendant to the alleged crime. The court commented that the trial judge had further protected against undue emphasis by controlling the manner of replay, requiring the videotape to be replayed in open court in its entirety under court supervision. *Sacco*, 869 F.2d at 502-03.

Many of the other states examining this issue have recognized the nature of videotaped testimony increases the likelihood it will be given undue emphasis when replayed. The Florida Supreme Court held that allowing videotaped testimony in the jury room during deliberations had a prejudicial effect similar to submitting depositions to a jury. *Young v. State*, 645 So. 2d 965, 967 (Fla. 1994). The court noted the use of such videotapes effectively allowed the State to recall the witnesses and have them retestify.

*Young*, 645 So. 2d at 966-67. In another case examining this issue, the Wyoming Supreme Court found "[t]he more testimony the court repeats, the greater the danger of undue emphasis" and determined that "[e]ven with the best of procedures" video repetition to review the general credibility of a witness would be improper. *Chambers v. State*, 726 P.2d 1269, 1276 (Wyo. 1986); *accord State v. Harris*, 247 Mont. 405, 808 P.2d 453 (1991) (holding rereading entire testimony of witness constituted harmful error). Finally, the Oklahoma Court of Criminal Appeals considered the important distinction between portions of the transcript being read dispassionately to a jury and allowing the jury to hear, and see, the entire testimony of a witness a second time. *Martin v. State*, 1987 OK CR 265, 747 P.2d 316, 319. The court concluded, "[t]he possibility for abuse is, we believe, substantially increased with video technology." *Martin*, 747 P.2d at 319.

■ We agree with these courts and conclude, from our review of the principles and cases dealing with this issue, the unique nature of videotaped testimony requires trial courts to apply protections against undue emphasis that consider both the effect and the manner of video replay. Trial courts must consider how the replay can be limited to respond to the jury's request and the procedures necessary to protect the parties. Protections to prevent undue emphasis in the manner of video replay may include replay in open court, court control over replay, and review by both counsel before presentation to the jury. Other protections may include the extent to which the jury is seeking to review facts, the proportion of testimony to be replayed in relation to the total amount of testimony presented, and the inclusion of elements extraneous to a witness' testimony. A determination to allow videotape replay should balance the need to provide relevant portions of testimony in order to answer a specific jury inquiry against the danger of allowing a witness to testify a second time. It is seldom proper to replay the entire testimony of a witness. These considerations are not exhaustive but should be evaluated before a videotape replay is presented to a deliberating jury.

With these considerations in mind, we focus our attention on the circumstances of the replay here. We review a decision of the trial court to allow the jury to reread transcripts of trial testimony for an abuse of discretion. *See State v. Caliguri*, 99 Wn.2d 501, 509, 664 P.2d 466 (1983). Koontz argues because his credibility was the crux of his defense, the court should have considered that the video replay repeated the State's case without rebuttal. Koontz also asserts the trial court contributed to the coerciveness of the video review by erring in its communications with a deliberating jury. Those errors included using the presiding juror as an intermediary for communications with the jury and expressing the need for a unanimous verdict after deliberations had begun. *Contra* CrR 6.15(f). Koontz claims that replaying the videotape in open court was not enough to overcome these failings.

The State presents several arguments supporting the video replay. First, the State contends the replay of video transcripts should be treated under the same standard as admitted sound or video recordings. *State v. Frazier*, 99 Wn.2d 180, 661 P.2d 126 (1983). Next, the State argues no error occurred here because both prosecution and defense witness testimony was replayed and the trial court advised the jury not to unduly emphasize any of the testimony. The replay was controlled by the court and occurred in open court, not in the jury room under jury control, so isolated portions of the testimony could not be taken out of context. Finally, the State argues that replaying the video transcript avoided inaccuracies that may have resulted from transcription or the use of improper vocal inflections during the rereading of testimony.

█ The State's first argument, that the videotaped trial testimony should be treated under the same standard as an admitted sound or video exhibit, is not persuasive. In *Frazier*, we were presented with three concerns regarding the evidentiary use of tape recordings and their transcripts: (1) the tape recordings themselves constituted the best evidence; (2) the transcripts were not properly authenti-

cated and, thus, were purely hearsay; and (3) the jury's use of such transcripts violated the rule against undue repetition and improper evidence. We were invited to adopt the view that sound or video exhibits be admitted as court exhibits only, since court exhibits do not go into the jury room. *Frazier*, 99 Wn.2d at 188. We declined the invitation, reasoning that the first two concerns—whether the tape recordings constituted the best evidence or whether the transcripts of the tape recordings were improperly authenticated—were not at issue where the tape had been properly authenticated, and itself admitted as an exhibit. As to the third concern, that the jury's use of such transcripts violated the rule against undue repetition and improper evidence, we held that the admission of a tape recording as an exhibit, in and of itself, does not overly emphasize the importance of that evidence. *Frazier*, 99 Wn.2d at 190. Our holding in *Frazier* does not apply to a videotape transcript made at trial because unlike the tape at issue there, the videotape here was not evidence. Our jurisprudence regarding admitted sound or video exhibits is simply inapposite to the present case.

The State's remaining arguments are not entirely without merit, particularly since the trial court was faced with a novel evidentiary issue. The trial court did take some precautions to prevent the manner of the replay from unduly emphasizing any portion of the testimony. The court also properly instructed the jury. However, we find the precautions in this case were insufficient because the court failed to consider the improper effect of the video replay and none of the protections it employed could correct this failure.

In their review of videotaped testimony, the jury was not limited to discrete portions of testimony. Instead, they were specifically looking for indications, "facial expressions and whatnot," of credibility. In essence, the jury sought an improper repetition of the complete trial testimony of three critical witnesses. The initial deadlock illustrates the difficulty the jury had making its determination without what

amounts to a retrial. The video replay was made worse by the fact that during the jury's review it was exposed to views of the defendant it did not have during the trial. The video transcripts were not limited to witness testimony, but included nontestamentary elements, such as isolated shots of the defendant and unnecessary views of the judge and nontestifying trial participants. The trial judge attempted to minimize the impact of these elements on replay, but counsel had no opportunity to assess their effect or to object to their potentially prejudicial impact. These additional views, which the jury may not have had during the trial, and which were not related to the witness' testimony, likely affected the jury's verdict.

The extent of the review and the context in which the review occurred further emphasized the testimony. Although the video replay consisted of a substantial portion of the entire testimony presented at trial, it was largely directed to a single issue. No effort was made to restrict review to specific factual issues. The context of replay heightened this emphasis. Although the jury had deliberated for a relatively brief time, they were not instructed to continue deliberations, but were allowed to replay the video testimony. The decision to allow the replay strongly implied that review should resolve the apparent deadlock. Finally, the trial judge relayed jury communications through the presiding juror, thereby increasing the danger of inadvertent miscommunication regarding the review. We conclude it was error for the trial court to replay the videotape to the jury.

We must next determine whether this error was harmful. *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). In this case, Koontz was harmed because the error materially affected the outcome of his trial. No direct physical evidence tied Koontz to the assault. Both the State's case and Koontz's defense depended upon opportunity to commit the assault. The verdict was inextricably linked to the jury's determination of Koontz's credibility. The replay unduly emphasized testimony directed at this central issue. We conclude this error was not harmless.

## CONCLUSION

We reverse the decision of the Court of Appeals and remand for a new trial.

ALEXANDER, C.J., and SMITH, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.