[No. 36853-6-II.    Division Two.    December 30, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. MELVIN JOHN MORGENSEN, JR., *Appellant*.

---

[111] *Pope*, 121 Wn.2d. at 491.

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*Juelie Dalzell, Prosecuting Attorney*, for respondent.

¶1 QUINN-BRINTNALL, J. — A jury found Melvin John Morgensen Jr. guilty of felony harassment. Morgensen appeals his conviction, claiming that the trial court erred when it played an audiotape of the entire trial testimony to the jury during deliberations. Morgensen also contends that the trial court violated the appearance of fairness doctrine when Judge Craddock D. Verser indicated that he

may have represented Morgensen previously and, during sentencing, commented on Morgensen's character. By not timely objecting to having his former defense counsel preside over this felony harassment trial, Morgensen waived his second challenge. Because the trial court did not abuse its discretion when it carefully reviewed the *Koontz*[1] factors and decided to play the audiotape of the witnesses' testimony for the jury, we affirm.

## FACTS

¶2 On the evening of July 14, 2007, Deputy Gordon Thomas Tamura arrested Morgensen on a domestic violence assault complaint filed by Morgensen's girl friend. At the time of the arrest, Tamura suspected that Morgensen was under the influence of alcohol. Believing Morgensen had been drinking excessively, Tamura drove him to a hospital to clear him for booking. On the way to the hospital, Morgensen threatened to kill Tamura and his family. Jefferson County charged Morgensen with felony harassment based on these threats.

¶3 At trial, Deputy Tamura testified that Morgensen threatened to kill him and his family. Morgensen admitted to yelling at Tamura but he claimed that he was too drunk at the time to recall what he had said. After deliberating for some time, the jury requested a copy of Tamura's and Morgensen's testimony. The trial court discussed with the State and defense counsel the possibility of playing an audiotape of the requested trial testimony to the jury. The trial court also reviewed *Koontz* with the parties to determine if playing the entire audiotape of trial testimony would be proper under the facts and circumstances of the case. The defense counsel objected to playing the audiotape of testimony, arguing that playing the recording would create an undue delay and prejudice Morgensen's ability to receive a fair trial.

---

[1] *State v. Koontz*, 145 Wn.2d 650, 41 P.3d 475 (2002).

¶4 The trial court overruled Morgensen's undue delay objection because of the relatively short length of the testimony (35 minutes) and ruled that it would play the entire trial testimony in open court. Additionally, the trial court considered the guidelines set forth in *Koontz* and ruled that playing the entire audiotape of the testimony of both Deputy Tamura and Morgensen would minimize any improper emphasis on any part of the testimony and was preferable to letting the jury review written transcripts because the latter could violate the rule against undue repetition and improper evidence by allowing the jury an opportunity for rereading.

¶5 The trial court also advised the State, defense counsel, and Morgensen of their respective right to be present while the trial court played the audiotape to the jury and further instructed the parties not to make expressions of any kind during the process. Moreover, prior to playing the audiotape of the testimony, the trial court advised the jury that one of the factors it could consider in deliberations was the witnesses' manner while testifying and that this information would not be available during the playing of the audiotape. The jury found Morgensen guilty of felony harassment.

¶6 At Morgensen's sentencing hearing, the State requested an eight-month sentence, the top of the standard range. The deputy prosecutor also made the following comment, "I've heard apocryphally that [Morgensen], when he's not under the influence, is a really nice guy. . . . I'm certainly aware that there's a certain amount of Jekyll & Hyde that probably contributed to this situation." Report of Proceedings (RP) at 151. The defense counsel later commented, "[Y]ou know, the Prosecutor's right, when [Morgensen] isn't drinking he's a pleasure to be around. He's not when he's had far too much to drink." RP at 154.

¶7 Before imposing a sentence, the trial court made the following comment to Morgensen:

I've known, you know, I've known you for years and I think I've represented you before. I've sat where [the defense counsel] is before.

And, when, and [the prosecuting attorney] is right, [the defense counsel] is right, as long as you're not drinking you're a very decent human being. You are the worst alcoholic when you drink, you're the worst person that you can be. I don't know why, you know, that's between you and whatever. But, you're a terrible drunk.

. . . .

. . . You always get in trouble. Everything that you've gotten in trouble for over the past ten years has always been when you get intoxicated, and you abuse people. Whether it's [Deputy] Tamura, your girlfriend, or anyone else around you. I mean, that's your history, [Morgensen], and you know it as well as I do. I'm not telling you anything you don't know.

RP at 159.

¶8 The trial court then sentenced Morgensen to eight months' incarceration, allowing Morgensen to serve the last three months in an inpatient treatment program. The trial court also stated its intention to allow this sentence to run concurrently with an unrelated obstruction of justice charge pending in district court.

## ANALYSIS

RECORDED TRIAL TESTIMONY

■ ¶9 Because no Washington case has specifically dealt with the issue of playing the audiotape of trial testimony to the jury during deliberations, we apply the balancing requirements in *Koontz* by analogy, taking into account significant differences between videotapes and audiotapes. We review a trial court's decision to allow the jury to listen to an audiotape of trial testimony during deliberations for an abuse of discretion. *Koontz*, 145 Wn.2d at 658 (trial court's decision to allow jury to watch videotape of trial testimony during deliberations reviewed for abuse of discretion). A trial court abuses its discretion when it exercises

it in a manifestly unreasonable manner or bases it on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

¶10 A trial court has discretion to permit a jury to review witness testimony during its deliberations. *State v. Monroe*, 107 Wn. App. 637, 638, 27 P.3d 1249 (2001), *review denied*, 146 Wn.2d 1002 (2002). However, concern that such a review does not unduly emphasize any portion of the testimony circumscribes that discretion. *Monroe*, 107 Wn. App. at 638. "Whether a jury should reread transcripts is dependent upon the particular facts and circumstances of the case and must be weighed against the danger that the jury 'may place undue emphasis on testimony considered a second time at such a late stage of the trial.' " *Koontz*, 145 Wn.2d at 654 (internal quotation marks omitted) (quoting *United States v. Montgomery*, 150 F.3d 983, 999 (9th Cir.), *cert. denied*, 525 U.S. 917 (1998)); *Monroe*, 107 Wn. App. at 638. Further, because a jury must remain impartial as it determines the facts, our Supreme Court disfavors reading back testimony during deliberations. *Koontz*, 145 Wn.2d at 654 (citing *United States v. Portac, Inc.*, 869 F.2d 1288, 1295 (9th Cir. 1989), *cert. denied*, 498 U.S. 845 (1990)).

¶11 Our Supreme Court has analyzed the unique nature of playing videotapes of trial testimony to the jury during deliberations and some of these same principles apply to audiotapes of trial testimony.[2] In *Koontz*, our Supreme Court held:

> Reviewing videotaped testimony raises greater concerns than reading from a transcript because videotaped testimony allows the jury to hear and see more than the factual elements contained in a transcript.
>
> . . . .
>
> . . . [T]he unique nature of videotaped testimony requires trial courts to apply protections against undue emphasis that

---

[2] We do not evaluate the treatment of replaying audiotape testimony by the standard used in *State v. Frazier*, 99 Wn.2d 180, 661 P.2d 126 (1983), which addresses the treatment of an admitted sound or video *exhibit*. Our Supreme Court rejected this approach in *Koontz*. 145 Wn.2d at 658-59.

consider both the effect and the manner of video replay. Trial courts must consider how the replay can be limited to respond to the jury's request and the procedures necessary to protect the parties.

145 Wn.2d at 655, 657.

¶12 The *Koontz* court suggested procedural precautions that a trial court should take when deciding whether to play a videotape of trial testimony to a jury during deliberations:

Protections to prevent undue emphasis in the manner of video replay may include replay in open court, court control over replay, and review by both counsel before presentation to the jury. Other protections may include the extent to which the jury is seeking to review facts, the proportion of testimony to be replayed in relation to the total amount of testimony presented, and the inclusion of elements extraneous to a witness' testimony. A determination to allow videotape replay should balance the need to provide relevant portions of testimony in order to answer a specific jury inquiry against the danger of allowing a witness to testify a second time. It is seldom proper to replay the entire testimony of a witness. These considerations are not exhaustive but should be evaluated before a videotape replay is presented to a deliberating jury.

145 Wn.2d at 657.

¶13 While there is no absolute prohibition on playing an audiotape of trial testimony during jury deliberations, the right to a fair and impartial jury, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington Constitution, requires that the trial court balance the need to provide the jury with relevant portions of testimony to answer a specific inquiry against the danger of allowing a witness to testify a second time. *Koontz*, 145 Wn.2d at 653, 657.

¶14 We hold that the trial court took the proper precautions to address the concerns raised in *Koontz* prior to playing the audiotape testimony to the jury during delibera-

tions and, therefore, did not abuse its discretion. First, in response to the jury's request for a transcript of the trial testimony, the trial court reviewed *Koontz* with the parties to determine if playing the entire audiotape of trial testimony would be proper under the facts and circumstances of the case. While *Koontz* disfavors playing the entire testimony of a witness, the trial court determined that, given the relatively short nature of the testimony, playing a recording of the entire trial testimony would not unduly delay the proceedings and was the most reasonable course in this case. The trial court also determined that playing the entire testimony minimized undue emphasis on any one part of any one witness's testimony. Additionally, the trial court found that playing an audiotape of the testimony once was preferable to letting the jury repeatedly review written transcripts. Finally, before playing the audiotape of the testimony in open court, the trial court cautioned the parties not to make expressions of any kind during the playing of the tape.

¶15 Notwithstanding the trial court's precautions before playing the entire trial testimony audiotape to the jury, Morgensen suggests that playing the audiotape of the testimony amounts to trying him twice. We disagree. Because jeopardy attached, but was never completed, there was no second trial. *See State v. Scott*, 145 Wn. App. 884, 890-92, 189 P.3d 209 (2008) (describing when jeopardy terminates); *State v. Higley*, 78 Wn. App. 172, 179, 902 P.2d 659 (describing when jeopardy attaches), *review denied*, 128 Wn.2d 1003 (1995).

¶16 In addition, we view the audiotape as a note-taking device, akin to that permitted under CrR 6.8. Moreover, we note that the concerns raised in *Koontz* about playing a videotape of trial testimony differ from those relating to the playing of an audiotape of trial testimony here. First, although *Koontz* suggests that a trial court should evaluate the need to play relevant recorded portions of testimony "to answer a specific jury inquiry," the trial here was very short and a selective presentation of a portion of a witness's

testimony was more likely to place an undue emphasis on that portion of the evidence. 145 Wn.2d at 657. Playing the entire audiotaped testimony of both witnesses eliminated any undue emphasis. Accordingly, Morgensen was not prejudiced by the trial court's exercise of its discretion to allow the jury to hear both the defendant's testimony and the officer's testimony again. *Koontz*, 145 Wn.2d at 657. The trial court clearly stated his intention to play the recordings of the entire testimony to avoid undue emphasis on any portion of the testimony and further instructed the parties not to make expressions during the playing.

¶17 Second, the videotape in *Koontz* unduly and inadvertently emphasized certain aspects of the trial that are not really evidence, such as the defendant's demeanor when the witnesses were not on the stand and the demeanor of the judge or counsel. Those factors were not preserved in the audiotape. Finally, as *Koontz* clearly states, video transcripts are unique; the moving camera infuses the focus, degree of attention, and observations of the operator into the jury's deliberations in a way that an audiotape does not. 145 Wn.2d at 652-53, 659-60.

¶18 As *Koontz* requires, the trial court here carefully evaluated considerations of fairness and took appropriate precautions prior to allowing the playing of an audiotape of the entire trial testimony. The trial court did not abuse its discretion when it granted the jury's mid-deliberation request to review the testimony of the only two witnesses at trial by playing the audiotape transcript of their testimony in its entirety.

APPEARANCE OF FAIRNESS DOCTRINE

██ ██ ¶19 Next, Morgensen argues that the trial judge violated the appearance of fairness doctrine when he failed to recuse himself from the case, despite having an allegedly unfavorable opinion of Morgensen based on having been Morgensen's defense counsel in prior criminal cases. But Morgensen waived this challenge by not objecting below. RAP 2.5(a); *In re Welfare of Carpenter*, 21 Wn. App. 814, 819-20, 587 P.2d 588 (1978).

¶20  Under RAP 2.5(a), an "appellate court may refuse to review any claim of error which was not raised in the trial court." The doctrine of waiver applies to bias and appearance of fairness claims. *See, e.g., State v. Bolton*, 23 Wn. App. 708, 714, 598 P.2d 734 (1979) (we refused to consider appearance of fairness issue raised for first time on appeal), *review denied*, 93 Wn.2d 1014 (1980); *Carpenter*, 21 Wn. App. at 820 ("a litigant who proceeds to trial knowing of potential bias by the trial court waives his objection and cannot challenge the court's qualifications on appeal").

¶21  Here, Morgensen was aware of the potential for bias because he knew that the trial judge had been his defense counsel in a previous case. And he would have been entitled, as a matter of right, to a different judge upon the filing of a timely motion and affidavit of prejudice. RCW 4.12.050; *Carpenter*, 21 Wn. App. at 820. But Morgensen did not object to his former defense counsel being the trial judge on this unrelated charge and, therefore, waived this issue.[3] Trial counsel cannot stay silent to preserve an issue for possible future appeal. *City of Seattle v. Harclaon*, 56 Wn.2d 596, 597, 354 P.2d 928 (1960).

¶22  Because the trial court did not abuse its discretion when it carefully applied the *Koontz* factors to the playing of the audiotape of the trial testimony here, its decision to play the witnesses' testimony in its entirety was not error. We affirm.

HUNT, J., concurs.

---

[3] We note that our review of the record reveals no indication of bias, and Morgensen's counsel admitted during oral argument there is no evidence that Morgensen was prejudiced by the judge's prior representation. To the contrary, Morgensen received a standard range sentence shortened to the extent that the last three months were to be served in an in-patient treatment facility. Moreover, the trial court expressed its intention to run Morgensen's sentence in this case concurrently with an unrelated gross misdemeanor sentence for obstruction of justice, stating, "If you're charged with obstructing over there, and that arises out of this arrest, I would certainly say that that should run concurrent with this. . . . [Y]ou can bring it back in front of me if you get convicted of something over there." RP at 162-63.

¶23 VAN DEREN, C.J. (concurring in part and dissenting in part) — I respectfully dissent only on the issue of whether the trial court abused its discretion by replaying the audiotape of the entire trial testimony, apparently to avert a deadlocked jury.

¶24 The majority does not discuss the jury's first question following approximately 3 hours and 45 minutes of deliberations. They asked, "What if it appears we have a 10-2 hung jury?" Report of Proceedings (RP) at 129. After asking the presiding juror whether she believed there was a reasonable probability of the jury reaching a verdict within a reasonable time and receiving her affirmative response, the trial court directed the jury to continue deliberating. It then appears from the record on appeal that, following a brief recess,[4] the trial court and counsel addressed the jury's second question, "Could [they] have a copy of the statements made by Officer Tamura and Mr. Morgensen while on the stand[?]" RP at 132. Instead of telling the jury to continue deliberating based on the jurors' collective memories and notes, the trial court replayed all of the trial testimony.

¶25 I believe that here, as our Supreme Court said in *State v. Koontz*, 145 Wn.2d 650, 659-60, 41 P.3d 475 (2002), "The initial deadlock illustrates the difficulty the jury had making its determination without what amounts to a retrial." "A determination to allow videotape replay should balance the need to provide relevant portions of testimony in order to answer *a specific jury inquiry* against the danger of allowing a witness to testify a second time. *It is seldom proper to replay the entire testimony of a witness.*" *Koontz*, 145 Wn.2d at 657 (emphasis added). The Supreme Court's holding in *Koontz* does not suggest, as does the majority, that hearing the entire trial testimony on audiotape is a

---

[4] The record before us does not specify how much time elapsed between the jury's two questions, but the discussion on the record following the first question, concerning a hung jury, indicates that Morgensen remained in the courtroom rather than returning to the jail while they waited on the jury. Then, following a recess, the court reconvened to discuss the jury's second question, asking for copies of witness statements, while Morgensen was still present.

"note-taking device, akin to that permitted under CrR 6.8." Majority at 89.

¶26 The trial court's proper response to a jury's request to rehear[5] trial testimony in the absence of a specific question is to deny the request and direct the jury to continue to deliberate. The majority overlooks this alternative response that avoids the many issues raised when a jury again hears an entire trial (1) without a specific jury question, (2) after the jury indicates that it is deadlocked, (3) shortly after beginning deliberations, and (4) without trial counsel's prior review of the audiotape.

¶27 I would hold that the circumstances here did not meet the requirements in *Koontz* justifying repetition of trial testimony during deliberations. Thus, the trial court's actions constituted an abuse of discretion. Morgensen was denied his right to a fair trial because, after the jury indicated that it was deadlocked and asked to rehear the entirty of Tamura's and Morgensen's trial testimony, apparently to overcome the impasse, the trial court agreed to the jury's request without requiring a specific question. Under these circumstances, the replay constituted a second trial within the first trial, without the presence of the witnesses so the jury could observe demeanor and judge credibility and without new argument by counsel. I know of no provision allowing blatant disregard for the right of litigants to only one trial when a jury is unable to reach a verdict based on the evidence properly and fully presented the first time.

¶28 I would reverse and remand for a new trial.

Review denied at 166 Wn.2d 1007 (2009).

---

[5] The jury asked to read Tamura's and Morgensen's testimony but the trial court rejected that request in favor of playing the audiotape. *See* majority at 85, ¶ 4.