

FILED
COURT OF APPEALS
STATE OF WASHINGTON

2016 DEC 27 AM 10: 5 .

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74143-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JESSE THOMAS FULLER, | ) | |
| | ) | |
| Appellant. | ) | FILED: December 27, 2016 |
| | ) | |

APPELWICK, J. — Fuller appeals his conviction for two counts of rape of a child in the first degree. The six year old victim was a key witness at trial, but her in-court testimony was difficult to hear. Fuller argues that the trial court erred by allowing a transcript of the victim's testimony to be read to the jury. He also alleges that the prosecutor committed misconduct in closing argument. We affirm.

## FACTS

A.M.F. told her mother that her father, Jesse Fuller, had been making her engage in sex acts with him. A.M.F. was four years old at the time. The King County Sheriff's Office was notified, and Fuller was charged with two counts of rape of a minor in the first degree.

At trial, A.M.F. testified about the sexual abuse. The testimony was difficult to hear, and the prosecutor had to ask A.M.F. numerous times to speak up. The

court provided A.M.F. with a microphone. The court noted that the jurors and the court alike had difficulties hearing her testimony. During deliberations, the jury asked, "Can we get a copy of the transcript of [A.M.F.]'s testimony because we had a very hard time hearing her." Instead of providing the jury with a copy of the transcript, the trial court ordered a transcript of A.M.F.'s testimony be read to the jury a single time by a bailiff from another chambers.

The jury found Fuller guilty on two counts of rape of a child in the first degree. Fuller appeals.

## DISCUSSION

Fuller makes three arguments. First, he argues that the trial court erred by allowing a transcript of the victim's previous testimony to be read to the jury. Second, he argues that the prosecutor committed misconduct during closing arguments. Finally, he argues that even if these two errors do not warrant reversal on their own, they amount to cumulative error.

I.   Reading testimony to jury

Fuller first argues that the trial court erred by ordering a transcript of A.M.F.'s testimony to be read to the jury due to the difficulty in hearing A.M.F.'s original testimony.[1] He contends that this overemphasized the child victim's testimony and denied Fuller the right to a fair and impartial jury.

---

[1] The State also admitted as exhibits two videos of A.M.F. In one video, she tells her mother about Fuller sexually abusing her. The second video is her interview with a child interview specialist. The jury was permitted to review them in the jury room. But, Fuller has not alleged any error regarding the jury's review of those videos in the jury room. We therefore limit our analysis to only the trial court's decision to have a transcript of A.M.F.'s testimony read to the jury.

2

We will overturn a trial court's decision to allow a jury to review testimony only if we find that the trial court abused its discretion. See State v. Morgensen, 148 Wn. App. 81, 87, 197 P.3d 715 (2008). Reviewing testimony during deliberations is disfavored, and must be weighed against the danger that the jury may place undue emphasis on testimony considered a second time at such a late stage of the trial. State v. Koontz, 145 Wn.2d 650, 654, 41 P.3d 475 (2002). But, whether a jury may rehear testimony is dependent on the particular facts and circumstances of a case. Id.

Fuller relies primarily on two Washington cases. First, he relies on Koontz. In that case, our Supreme Court held that replaying video of three witnesses' testimony was reversible error because of the possibility of "undue emphasis" on certain portions of testimony. Id. at 660-61, 657. The Court reasoned that courts should balance the needs for reviewing the testimony with procedural safeguards, such as limiting the amount of times the jury can review the video, to prevent juries from overemphasizing the evidence. Id. at 657. And, the Court was careful to note that the "unique nature of videotaped testimony" made replaying video for the jury especially concerning, and motivated its decision to reverse. Id. at 657, 659-61

Fuller argues that, under Koontz, reading a transcript to the jury is "a poorer substitute" than reviewing live testimony via video, and therefore reading a transcript should raise greater concern than the jury reviewing a video. But, this directly contradicts the Koontz reasoning, "Reviewing videotaped testimony raises greater concerns than reading from a transcript because videotaped testimony

3

allows the jury to hear and see more than the factual elements contained in a transcript." Id. at 655.

Although Koontz establishes that rereading transcribed testimony is less concerning than replaying video, any second presentation of testimony is "disfavored." Id. at 654. But, Koontz does not say it is prohibited. See Id. And, in such situations, it is important for the trial court to take "the proper precautions to address the concerns raised in Koontz." Morgensen, 148 Wn. App. at 88-89 (holding that trial court "took the proper precautions," such as inviting authority and arguments from the parties on balancing the concerns raised in Koontz, and replaying audio only once instead of giving the jury a transcript during deliberations.). Here, the trial court first invited the parties to submit authority on the issues so that its decision on the jury's request was properly informed. After deciding to have the testimony reread, the trial court specifically reminded the jury that it must take into account all of the evidence presented, and not just the reread testimony:

> Ladies and gentlemen, you've asked to rehear the testimony of [A.M.F.].
>
> After consulting with the attorneys, I am granting your request.
>
> In making this decision, I want to emphasize that I'm making no comment on the value or weight to be given to any particular testimony in this case. The testimony you requested will be read to you here in the courtroom. You will hear it only one time.
>
> After you've heard the testimony, you will return to the jury room to resume deliberations. When you -- when you do, remember that your deliberations must take into account all of the evidence in the case, not just the testimony that you have asked to rehear.

And, it did not grant the jury's initial request to "get a copy of the transcript," but instead took the more careful approach of allowing the transcripts to be read to the jury a single time in open court. The trial court applied the types of protections that Koontz contemplates.

Fuller also relies on in State v. Monroe, 107 Wn. App. 637, 27 P.3d 1249 (2001). There, a jury was permitted to read a witness's transcribed testimony while in the jury box, but was not allowed to reference the transcript in deliberations. Id. at 640. The court reversed Monroe's conviction, because the trial court expressed no concern for the possibility of undue emphasis of the testimony. Id. at 645-46. And, the manner of review—review in the jury box—overemphasized that testimony. Id. at 640, 643, 645. But, the facts of that case are critically different: the jury in Monroe could review the transcripts at will in the jury box, but in this case the testimony was read to the jury once from a transcript. Id. at 640. And, the Monroe trial court did not find "any logical basis" for disallowing the jury to review the testimony and imposed no safeguards, whereas the trial court here implemented the safeguards discussed above. Id. at 645. Monroe is factually distinct and does not control.[2]

Fuller also relies on United States v. Binder, 769 F.2d 595 (9th Cir. 1985), overruled on other grounds by United States v. Morales, 108 F.3d 595, 602 (9th

---

[2] The Monroe court based its decision on the Court of Appeals' Koontz decision. Monroe, 107 Wn. App. at 643 ("We believe that [State v. ]Koontz[, 102 Wn. App. 309, 6 P.3d 124 (2000),] should control."). We note that the Supreme Court later reversed the Court of Appeals' Koontz decision. State v. Koontz, 145 Wn.2d 650, 661, 41, P.3d 475 (2002). Because we hold that Monroe is factually distinguishable from the instant case, we decline to address whether the Supreme Court's Koontz decision affected Monroe's validity.

5

Cir. 1985), which Koontz cited favorably. Koontz, 145 Wn.2d at 655. In that case the Ninth Circuit held that the trial court abused its discretion by allowing the jury to review videotaped testimony in the jury room. Binder, 769 F.2d at 600-01. The court perceived that replaying the video risked unduly emphasizing that testimony. Id. Binder is critically different than this case: there, the jury was allowed to review the videotaped testimony in the privacy of the jury room. Id. But, here, the trial court allowed the transcript to be read to the jury in open court. And, Koontz explicitly notes that replaying video raises greater concern than reading a transcript. Koontz, 145 Wn.2d at 655. Binder is not dispositive.

Fuller also argues that the trial court should have given instructions with more detail, such as the jury instructions given in United States v. Montgomery, 150 F.3d 983 (9th Cir. 1998), which Koontz cited favorably. Koontz, 145 Wn.2d at 654. In Montgomery, the trial court allowed a jury to review testimony transcripts in the jury room. 150 F.3d at 999. The court found no abuse of discretion because the trial court gave a lengthy instruction that reminded the jury not to emphasize the transcripts over the other evidence:

> "I want you to bear in mind that the testimony at trial is the evidence, not the transcripts. The transcript is not authoritative. If you remember something different from what appears in the transcripts, your collective recollection is controlling. In other words, the transcripts may not serve as a substitute for the collective memories of the jury or take the place of the assessment of the credibility of witnesses subject to the usual rules. . . . Finally, as the court has previously instructed you, you must weigh all of the evidence in the case and not focus on any one portion of the trial."

Id. at 999-1000 (alteration in original).

Here the trial court gave a limiting instruction that explicitly reminded the jury that it must consider all evidence, not just the transcripts. Admittedly, it did not make the same admonitions as Montgomery regarding the transcript not being authoritative and regarding reliance on their collective recollections if different from the transcript. But, Fuller has never suggested that the transcript was not an accurate statement of the testimony given. It is not clear such an admonition was necessary.

The trial court allowed the transcript to be read aloud only a single time, did not allow the jury to bring a transcript into the jury room, and cautioned the jury to consider all of the evidence. This aligns with the Koontz and Morgensen courts' emphasis on procedural safeguards. Koontz, 145 Wn.2d at 654-55; Morgensen, 148 Wn. App. at 88-89. There is little else that the court could have done in this case to guard against potential undue emphasis. For these reasons, we cannot say that the trial court's decision to allow the transcript to be read to the jury was an abuse of discretion.

II.  Prosecutorial Misconduct

Fuller next argues that the prosecutor committed misconduct during his closing argument.

The defendant bears the burden of proving that the prosecutor's alleged misconduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The burden to establish prejudice requires the defendant to prove that there is a substantial likelihood that the instances of misconduct affected the jury's verdict. State v. Thorgerson, 172 Wn.2d 438, 442-

43, 258 P.3d 43 (2011). The failure to object to an improper remark constitutes a waiver of error unless it is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. Id. at 443. Fuller did not object to any of these statements. His arguments on this issue are therefore waived unless the remarks were flagrant, ill-intentioned, and unable to be cured by a supplemental instruction. Id.

A. Appeal To Jurors' Passions

Fuller first argues that the prosecutor committed misconduct by making an improper appeal to the jurors' passions. Fuller points to the prosecutor asking the jury to "[t]hink for a moment about the powerlessness of that little girl." He argues this error was compounded when the prosecutor elaborated on these statements by analogizing the victim's willingness to share her story to a child testing the water for danger before swimming in unknown waters. By the prosecutor's analogy, as the victim became more comfortable, she began to share more, which explained the child victim's inconsistent willingness to share her story. In response, the State contends that the prosecutor's comments were not an improper appeal to emotion, but rather inferences "reasonably drawn from the evidence."

A prosecutor may not appeal to the passions of the jury so as to encourage a verdict based on emotion rather than evidence. State v. Berube, 171 Wn. App. 103, 118-19, 286 P.3d 402 (2012). This court reviews a prosecutor's allegedly improper remarks in the context of the total argument. State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994). Here, the prosecutor made the "powerlessness" comment in the context of explaining to the jury how and when A.M.F. told her

8

mother about her father's conduct. The prosecutor's next sentence addressed A.M.F. "trying to articulate to her mother what was happening." A.M.F.'s credibility was a key issue at trial. A prosecutor has "wide latitude" to comment on and explain its evidence in closing arguments. See Thorgerson, 172 Wn.2d at 453. Based on the context, the prosecutor referenced A.M.F.'s "powerlessness" to explain A.M.F.'s reluctance to describe the sexual abuse and her delay in alerting her mother. And, we are not persuaded that a limiting instruction would have been inadequate.

With respect to the swimming analogy, Washington courts have upheld prosecutors' use of analogies and metaphors before. See State v. Fuller, 169 Wn. App. 797, 828, 282 P.3d 126 (2012). For example, in Fuller, we upheld a prosecutor's puzzle analogy for the evidence introduced because the analogy "did not minimize the State's burden of proof because it did not purport to qualify the level of certainty to satisfy the beyond a reasonable doubt standard nor did it minimize or shift the burden of proof to the defendant in the context of the argument as a whole and the trial court's correct jury instructions." Id. at 826. And, in State v. Barajas, we affirmed a conviction when the prosecutor compared the defendant to a "mangie [sic], mongrel mutt." 143 Wn. App. 24, 39-40, 177 P.3d 106 (2007) (alteration in original). There, though the court found this obviously adverse metaphor for the defendant improper, it did not find that the metaphor was flagrant, ill-intentioned, and incurable such that reversal was warranted. Id. 40.

A swimming analogy for the victim's thought process is not as prejudicial as the analogy upheld in Barajas. The swimming analogy did not comment on the

burden of proof and did not denigrate the defendant. And, the analogy did not even relate to proving the elements of the crime charged like the puzzle analogy in Fuller. It was merely the prosecutor's attempt at a metaphor that presented the evidence favorably. Fuller has not carried his burden to show that the remarks were flagrant, ill-intentioned misconduct.

B. Mischaracterization of the burden of proof

Second, Fuller argues that the prosecutor committed misconduct by shifting the burden of proof. He points to a handful of the prosecutor's statements as burden-shifting. The prosecutor told the jury that if "you believed [the victim], that is enough in this case for you to find the defendant guilty." Later, she stated,

> [T]he last point I want to make in my closing is the State's burden, proof beyond a reasonable doubt. You have an instruction telling you about what that means. But in a case like this, it's simple, if you believe [A.M.F.] when she tells you what her father did, you are satisfied beyond a reasonable doubt.

The State responds that it gave a "proper statement of the law" in its statements about satisfying the burden. According to the State, it was merely reminding the jury that a victim's testimony alone can satisfy the beyond a reasonable doubt standard without any corroborating evidence, physical or otherwise.

Fuller analogizes to State v. Fleming, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996). In Fleming, this court reversed when the prosecutor told the jury that it must find that the defendants were lying or mistaken in their testimony in order to acquit. Id. Fleming is critically different from this case. There, the prosecutor argued that the jury may acquit only if it did not believe a witness's testimony. Id. But, here, the prosecutor told the jury that the prosecution had carried its burden

10

to <u>convict</u> if it believed the victim-witness. The former misstated the burden because it required the defendant to prove something just to support acquittal.

Here, the prosecutor merely reminded the jury that belief in A.M.F.'s testimony alone satisfied that burden because her uncontradicted testimony covered all the elements of the crime. Rape of a child in the first degree is defined as follows: "A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1). A.M.F. testified that Fuller had engaged in sexual intercourse with her, and that A.M.F. was less than twelve years old. This satisfied the statutory elements of the crime, and therefore, mere belief in A.M.F.'s truthfulness was indeed sufficient to find Fuller guilty. The prosecution therefore did not shift the burden of proof.

The prosecutor later made the following comment about why rape of a child does not require proof of a specific date: "this kind of crime notably does not require the State to prove the specific date. And that makes sense, doesn't it? Because what child could or would keep track of dates?" She later stated, "The law doesn't require corroboration. The law doesn't require medical evidence. The law doesn't require eyewitnesses." Fuller argues that these comments are prohibited under this court's recent decision in <u>State v. Smiley</u>, 195 Wn. App. 185, 379 P.3d 149 (2016), <u>review denied</u>, 2016 WL 7466613. In <u>Smiley</u>, the prosecutor's closing argument included a lengthy explanation about why it is good policy to not require corroborating evidence of sexual assault victims' testimony. <u>Id.</u> at 191. Most

11

notably, the Smiley prosecutor stated that if victim testimony alone was insufficient to support a conviction, " 'we'd have to tell the kids, sorry . . . we can't hold your abuser responsible.' " Id. at 192 (alteration in original). This court found the prosecutor's comments improper because "the implication was clear: if the jury agreed with defense counsel and refused to convict without corroborating evidence, other children are in danger." Id. at 194. However, the court did not reverse. Id. at 197. Smiley did not object at trial, and the court found that the resulting prejudice would have been curable upon objection. Id.

In Smiley, the improper statements to the jury were focused on policy implications of a not guilty verdict on other cases. But, the prosecutor here made no statements that rise to the level of " '[w]e couldn't hold the majority of sexual abusers responsible.' " Id. at 191. Rather, the prosecutor's statement was a brief explanation that a victim's testimony alone can be sufficient to support the elements necessary to convict. The prosecutor discussed the policy behind why rape of a child requires only a charging date range rather than the specific date of the crime: "And that makes sense, doesn't it? Because what child could or would keep track of dates?" But, this explanation did not implicate the impact of the decision of this jury on other sexual assault cases or future policy implications like the Smiley statements. The statements in Smiley were more prejudicial than the prosecutor's statements here, yet they did not warrant reversal under the "flagrant, ill-intentioned" standard that we must apply here. Id. at 197; Thorgerson, 172 Wn.2d at 443. The policy statements discussed here were not flagrant, ill-intentioned misconduct.

12

## C. Comment on witness' truthfulness

Third, Fuller argues that the State personally vouched for A.M.F.'s credibility. During closing arguments, the prosecutor stated, "I think you knew that she was telling you what happened." Later, the prosecutor also told the jury that "you'll look back and know what [A.M.F.] said is what happened to her." The State contends that these statements were merely a "summation" that amounted to no more than "a permissible inference drawn from the evidence."

It is improper for a prosecutor to express a personal opinion on the credibility of a witness. State v. Warren, 134 Wn. App. 44, 68, 138 P.3d 1081 (2006), aff'd, 165 Wn.2d 17, 195 P.3d 940 (2008). But, a prosecutor enjoys wide latitude to argue draw reasonable inferences from the concerning witness credibility. Id. 165 Wn.2d at 30.

Here, based on the context, the prosecutor's allegedly wrongful statements merely stressed A.M.F.'s credibility. One sentence after the prosecutor states "you'll look back and know," she asks the jury to consider A.M.F.'s demeanor when judging her credibility. This is a "reasonable inference from the facts concerning witness credibility" that the prosecutor is allowed to make. Id.

Moreover, none of the allegedly wrongful statements expressed the prosecutor's personal view as to whether the victim was credible. Rather, the prosecutor's statements were mere suggestions that the jury would, upon reflection, find A.M.F. to be a credible witness. The two allegedly wrongful statements to the jury were that "you'll look back and know she was telling you what happened" and "I think you knew" the victim was telling the truth. (Emphasis

13

added.)  The prosecutor did not state something along the lines of "I know" or "I guarantee" A.M.F. was telling the truth.  Fuller has not carried his burden to show that these comments were flagrant, ill-intentioned misconduct.

III.   Cumulative Error

Fuller argues that the foregoing issues amount to cumulative error.  The cumulative error doctrine applies when there have been several trial errors that standing alone do not warrant reversal, but when combined deny a defendant a fair trial.  State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).  But, because we find no error in the rereading of A.M.F.'s testimony and no prosecutorial misconduct, we find no cumulative error.

Affirmed.

WE CONCUR:

Appelwick, J.

Trickey, ACJ          Leach, J.

14